MOODY *VS* KEENER.

1. In a declaration against a bailee for non-delivery of a deposit, averments are only necessary, which serve to shew the grounds upon which the accountability of defendant arises.

2. And where the deposit is alleged to have consisted of bank notes, it need not be stated by what bank the notes were issued, —a general description, in such cases, being sufficient.

3. Nor is it necessary to allege that defendant *continued* to have the deposit in possession,—if it passed from him lawfully, or without culpable default, it is matter of defence, which he is bound to shew.

4. Nor is an averment necessary, that a reward was tendered for transportation or safe keeping of the thing deposited.

5. Trover may be brought for bank notes sealed in a letter.

6. A witness may state that he is a public officer, without producing his commission.

7. A verdict must respond to the issue, or it will be bad, and no judgment can be rendered on it.

8. Thus—in *case* against a post master, for negligently loosing and refusing to deliver a letter, &c. of plaintiff,—a verdict, that defendant *undertook and assumed*, &c. is erroneous.

Error to the Circuit court of Tuskaloosa county.

Case against a bailee for non-delivery of a letter containing bank notes.

The declaration, in this case, contained five counts, as follow :

The first charged, that the defendant, at the time of the receipt of a certain letter below mentioned, was post

Moody *vs.* Keener.

master at Tuskaloosa, and that plaintiff deposited at the post office at Louisville, Alabama, for the purpose of having the same conveyed to Tuskaloosa, and delivered to one Charles Lewen, plaintiff's agent at Tuskaloosa, a certain sealed packet or letter, to be carried in the mail, with a suitable subscription on the same, in which were bank notes to the amount and value of one thousand and seventy-five dollars, the property of plaintiff. And plaintiff averred that the said letter was received by the post master at Louisville, and by him duly applied and forwarded to the post office at Tuskaloosa, for the purpose of being delivered to said Charles Lewen, which plaintiff averred, that the letter was delivered to defendant at Tuskaloosa, and further averred that after the letter was received by defendant, said Charles Lewen demanded the letter. Yet defendant did not deliver the said letter to Charles Lewen, agent as aforesaid, but neglected and refused so to do, whereby the said sum of money was lost to plaintiff.

The second count, charged that plaintiff deposited with the post master at Louisville, for the purpose of having the same carried by mail to Tuskaloosa, to be delivered to the said Charles Lewen, agent of plaintiff, and that the post master at Louisville received for that purpose, a certain other letter, in which was enclosed bank notes to the value of one thousand and seventy-five dollars, the property of plaintiff, which said letter was superscribed and sealed, and was of proper size, form and description, and such as was lawful to be carried by mail. And plaintiff averred, that the latter was forwarded in the mail, and was received at the post of-

Moody *vs.* Keener.

fice at Tuskaloosa, and that at the time the letter arrived at Tuskaloosa, the office of post master was vacant by the death of the previous incumbent, and that defendant thereupon, of his own accord, entered the office, and took upon himself the duties thereof, and assumed the control thereof, and of the mails received at it. And plaintiff further averred, that the said letter came safely to the hands of defendant, and that it was the duty of defendant to deliver said letter to said Charles Lewen, when demanded,—and that Charles Lewen, at a proper time, did demand said letter, but that defendant, not regarding the duty he had assumed and undertaken to perform, and well knowing that said Charles Lewen was entitled to receive the said letter, refused to deliver the same, by reason whereof, the bank notes were lost to plaintiff.

The third count, alleged that the plaintiff deposited at the post office at Louisville, to the end that the same might be carried by mail to Tuskaloosa, and there delivered to Charles Lewen, agent of plaintiff, a certain other letter containing bank notes, to the value of one thousand and seventy-five dollars, directed to Charles Lewen, at Tuskaloosa. And the plaintiff averred, that the post master at Louisville, received the letter, and sent the same by mail to Tuskaloosa, and that it was delivered and received at Tuskaloosa, and when the letter arrived at Tuskaloosa, the office of post master was vacant, by reason of the death of the previous incumbent, so that there was no post master duly appointed at said office, and thereupon, defendant unlawfully possessed himself of the office, and assumed the authority of post master,

Moody vs. Keener.

without title or authority, and opened the mails, and claimed to be superintendent thereof. And plaintiff averred, that the mail containing the letter, enclosing the bank notes, duly sealed, came to the possession of defendant. And plaintiff averred, that the letter was properly deliverable to said Charles Lewen, when he should afterwards demand the same, and that said Charles Lewen did, within proper hours, demand the same of defendant, at the post office in Tuskaloosa, and that defendant refused to deliver the same, whereby plaintiff lost the bank notes aforesaid.

The fourth count, stated that plaintiff deposited at the post office at Louisville, to the end that the same might be carried by mail to Tuskaloosa, and there delivered to Charles Lewen, agent of plaintiff, a certain other letter containing bank notes, to the value of one thousand and seventy-five dollars, the property of plaintiff, directed to Charles Lewen, at Tuskaloosa; and plaintiff averred that the post master at Louisville, received the letter and sent the same by mail, which arrived at Tuskaloosa. And plaintiff averred, that when the mail and letter arrived at Tuskaloosa, the office of post master at Tuskaloosa was vacant, by reason of the death of the previous incumbent, so that there was no post master duly appointed at Tuskaloosa, and thereupon defendant possessed himself of the office, and assumed the power and authority of post master, and took upon himself the control of the office, by receiving, opening, distributing and forwarding the mails, and controlling and superintending the same. And the plaintiff averred, that the said mail containing the letter enclosing the bank notes sealed and

directed to Charles Lewen, the property of plaintiff, came to the possession of defendant. By means whereof he became bound, and it was his duty safely to keep the letter, and deliver the same to Charles Lewen, when he should demand it. And plaintiff averred, that defendant did not take proper care of said letter, but kept the post office so negligently, and took so little care of said letter, that the same, through his neglect and carelessness, want of attention and diligence in the discharge of the duty of post master, so assumed by him, that the letter and the money was wholly lost, and could not be found, and could not be delivered to said Charles Lewen, when demanded, wherefore plaintiff had sustained great loss and injury, in the loss of said sum of money.

The fifth count averred, that at the time the mail and letter arrived at Tuskaloosa, the defendant was post master there : that the mail containing the letter enclosing the amount of money in bank notes, sealed and directed to Charles Lewen, the property of plaintiff as aforesaid, came to possession of defendant. By reason whereof, it became the duty of defendant safely and securely to keep said letter, and deliver the same, when demanded, to Charles Lewen, to whom the same was directed. Plaintiff further averred, that defendant, not regarding his duty, did not take proper care of said letter, but so negligently and carelessly kept said post office, and took so little care of the letter, that the same, through his mere neglect, carelessness, want of attention and diligence, in the discharge of the duty of post master, so assumed by him,—the said letter, together with the money therein enclosed, was lost, and could not not be

Moody *vs.* Keener.

found, and could not be delivered, with the amount of money enclosed as aforesaid. And said plaintiff averred, that said Charles Lewen, afterwards demanded in a proper manner and time, that the said letter should be delivered to him, but the same could not be found, and could not be, and was not delivered. And so plaintiff said, that through the mere carelessness and negligence of said defendant, the said sum of money was lost to plaintiff. Wherefore plaintiff said he was injured, &c.

To the declaration there was a demurrer, which being overruled, defendant plead the general issue: and a verdict was rendered, as appeared by the entry, in the following form: " That defendant did undertake and assume upon himself, in manner and form as plaintiff had complained against him, and they (the jury) assessed plaintiff's damages, by occasion of defendant's non-performance of the said undertaking and assumption, at one thousand and seventy-five dollars, besides costs," &c.

Judgment accordingly.

The bill of exceptions stated, that plaintiff, without introducing any evidence of the establishment of a post office at Louisville, in Alabama, offered evidence to prove, that he had deposited the letter named in the declaration, in the post office, in said place; to which defendant objected, unless it was proved that there was a post office at that place, by higher evidence than the post master, by whom it was proved; which objection was overruled, and defendant excepted. Plaintiff then introduced a witness, and asked him if he was post master at Louisville, to which defendant objected, because there was higher evidence of the fact, that he was post master;

which objection the court overruled, and defendant excepted, &c.

The following is the assignment of errors:—

1. The court below erred in overruling the demurrer to the several counts of the declaration;

2. In admitting the evidence objected to, as set forth in the bill of exceptions;

3. In rendering judgment for defendant in error against plaintiff in error, on the verdict of the jury.

1st. Because the verdict was uncertain and insufficient;

2d. Because it varied from, and was not responsive to the issue joined between the parties;

3d. Because it found only a part of the matters in issue;

4th. Because it was a verdict in assumpsit, and not in case;

5th. Because it did not find the defendant below guilty of the charges in the several counts of the declaration, or any one of them;

6th. Because it was neither a general or special verdict applicable to the issue, or issues joined between the parties.

*Peck*, for the plaintiff in error.

*Porter*, for the defendant in error, contended—

1. That in declaring, in cases like this, the general rule must be adopted,—that essential averments only should be looked for: and as to these, only certainty to a common intent was required.

Moody *vs.* Keener.

The declaration should show enough, to evidence the claim, and not limit the defence.

The averments claimed as essential—to wit, that the letter was in the post office;—that it was carried on a mail route;—that the postage was paid;—and the particular description of the bank notes, lost:—were neither requisite to enable the plaintiff to recover, or to assist the defendant in his defence. The defendant could be liable without proof of any of these facts; for if proper to be averred, they must be proved.—If the letter came to the possession of defendant, he was liable, whether a post master, or not: and so whether the letter was carried upon a mail route recognised by law, or not. Suppose the letter had been carried upon a mail route, not established by act of congress, could that fact avoid the responsibility of defendant? Surely not. As to the averment of postage, this was certainly not material; for if defendant usurped the office, he would be liable for the letter; and could not demand the postage, as a condition precedent to its delivery.—The usurpation of the office, *per quod*, this letter was lost,—is part of the declaration. The particular description of the notes, was not essential in this action. Such description, might be essential in Detinue, but not in the action for mere damages.—1 Saund. P. & E. 394, 395, 396; 2 Stewart & Porter, 60; 1 Chitty's P. 364, 365, 371, 372, 373; Ibid, 147; 2 Ibid, 152, n. o.; 2 Saund. P. & E. 74, a. 1.

2. The proof of the witness being a public officer, was sufficient without the production of his commission. —3 Dane's Ab. 73; 3 John. 431; 4 D. & E. 366; 1

7 P.              29

Moody *vs.* Keener.

Phil. Ev. 179, 180; 6 Binney, 88; 9 Mass. R. 231; 2 Srta. 1005; 3 D. & E. 632; 3 Wils. 443.

3. That under the several counts, the judgment was good. The first count charged, that defendant was a post master, and had received the letter, which being demanded, defendant refused to deliver.

The second count charged, that the defendant, while acting as, and assuming the duties of post master, received the letter: *and disregarding the duty he had undertaken to perform,* refused to deliver, &c.

The third count charged, that defendant unlawfully took possession of the letter, and refused on demand to deliver.

The fourth, that defendant assumed duties of post master, took possession of the letter, and negligently lost it.

The fifth, that defendant so carelessly kept the office, that the letter was lost, &c.

The plea was the general issue.

Here, the defence reached to every count; and of course defended every charge and averment in the declaration. None of these counts put in issue only the mere receipt of the letter. That was one item of the averments; and the court cannot doubt here, but that the jury found this fact. If so, other enquiries arose—what became of the letter—was it negligently lost, or did the defendant refuse to deliver it in violation of his *undertaking, when he assumed to act as postmaster.* One of the charges is the assumption of the office.—By this assumption, defendant, as is contended, became bound for the diligent exercise of its duties. What were these duties? One, was to

Moody *vs*. Keener.

deliver this letter on demand. What say the jury?—
"Defendant did undertake and assume, in manner and
form as plaintiff had complained, and by reason of the
non-performance of defendant's undertaking and as-
sumption," the damages are assessed, &c. This, of course,
is not contended to be a technical finding in the action of
trespass on the case; but is it not equal to the issue?
If not so, it must be alone on the ground, that, the entry
is in assumpsit. Now, there is certainly more affinity
between the actions of assumpsit, and trespass on the
case proper,—than between assumpsit and debt: and
what says this court as to judgments in the latter action
—"That judgment is entered as in assumpsit, the action
being debt, is no error"—Carroll vs Meeks, (3 Porter,
226.)

The judgment rendered in this case, must have the
same effect, as if rendered strictly in case: and this tests
its sufficiency—3 Porter, 229; 1 Ib. 15; 3 Stew. & Por.
317; 3 Stew. 29; Ib. 38; Ib. 192; 1 Chitty's P. 209,
396.

GOLDTHWAITE, J.—In the examination of this case,
we shall consider the several questions, in the order in
which they have been presented by the argument of
counsel; and

1. As to the sufficiency of the several counts of the
declaration—

It is insisted that each count is bad, because there is
no averment of the establishment of post offices at either
Louisville or Tuskaloosa—nor of a post route, between
these places—nor of the appointment of a post master at

Louisville.   If the defendant is not liable for the neglect
complained of, unless there were post offices established
at these places, a post route designated, and a post mas-
ter at Louisville appointed, there would be a reason for
an averment of each of these facts; but his liability
does not, nor can arise out of these or similar matters, as
the declaration is framed.

It is charged with great precision in the three first
counts, that the letter came to the hands and possession
of the defendant, to be delivered to the plaintiff's agent,
to whom it was directed; and that the defendant failed
and refused to deliver it when demanded from him;
whereby it was wholly lost.   The two last counts aver
it to have been lost by the neglect and carelessness of
the defendant, after it came to his custody.   It is laid
down in all the authorities, that whenever the declara-
tion shews *a duty or a contract*, the action on the case
will well lie, although it may be questionable, if it lies
for a mere non-feasance.   In all cases of *deposit*, though
they are said to arise in contract, there is also a moral
duty, to deliver the thing deposited to the owner upon de-
mand—Max vs Roberts, et al, (12 East, 89.)

The case made on these counts of the declaration,
shews that the letter came to the hands of the defen-
dant; and thus the law imposes the legal obligation, to
deliver it to the owner when demanded, and a neglect
or refusal to do so, is a tortious act, for which case will
lie.

" If," says Judge Story, (in his treatise on bailment, p.
93,) " the depository improperly refuses to re-deliver the
deposit when it is demanded, he henceforth holds it at

Moody *vs.* Keener.

his own peril.   If, therefore, it is afterwards lost, *either* by his neglect, or by accident, it is the loss of the depositary ;   for he is answerable for all defaults and risks, in such cases."

It follows from these principles, that the averments contended to be necessary, are not so; for the accountability of the defendant, does not grow out of any of the machinery incident to the post office department, but from the single act of refusing to deliver to the owner, a deposit in the hands of the defendant for a particular purpose.

It is next insisted, that it should be stated by what bank the notes were issued, in order that the court might be able to judge if it was authorised to issue notes.

The enunciation of this proposition is somewhat startling, when we reflect that there is within the United States, more than three hundred banks.   No court could *ex cathedra,* undertake to determine from the statement made of the name of a bank, that it was authorised to issue bills; and if the averment was necessary, it would introduce great prolixity in pleading, as the mere statement of the names of many different banks, would very much encumber the record.   A greater certainty ought not to be required in an action of this nature, than is in an indictment for larceny, of similar descriptions of property.   As to such indictments, it has always been held not to be necessary to set out the instruments or bills *ver batim,* but a description of them, in a general manner, is sufficient—(2 East's P. Crown,602,777;)—thus, one bank note for the payment of five pounds, of the value of five pounds, or the like—Rex vs Johnson, (3 M. & S. 539 ;)—

but in actions like this, a much less general description will suffice, as the thing is not recovered, but damages merely, for its loss.

It is further insisted, that the first, second and third counts, are bad, because they do not contain an averment, that the letter was in the office when demanded, or that it had been lost, by the carelessness of the defendant.

The authorities cited, do not shew that this is necessary ; but if it was, the averment is substantially made. Each of these counts alleges the letter to have been given into the hands of the defendant, and that he omitted *and refused* to deliver it, when demanded. It was not necessary for the plaintiff to allege that he continued to have it in possession. If it passed from the defendant's possession lawfully, or without a culpable default by him, it was matter of defence which he was bound to shew; and the law will not presume, after it is traced to its hands, that it was not there when demanded from him.

Another objection, on which great stress has been laid, is, that no averment is made of the postage having been paid or tendered. No authority has been adverted to, which sustains this position, and the analogies of the law are all against it. There is no question as to the right to detain property subject to a lien, until the lien is discharged; but in no single case, so far as our researches have extended, is it necessary to allege a discharge or tender, in pleading.

The same right of lien, exists in the case of carriers, by land or water, and, indeed, in most cases of

Moody *vs.* Keener.

bailment: yet in none of the forms used in the books, do we find such an allegation. Even in actions against ship owners, on bills of lading, where the condition is express, to deliver on payment of freight, no tender or offer to pay is ever averred. Indeed, it falls within the acknowledged principle, that all matters of defence, must be pleaded, or given in evidence; and the plaintiff need, in no case, negative a fact which should be advanced by the defendant, as a complete bar to the action. But the position itself is unsound, when applied to the case of things which are lost, because the reward is only due when the thing bailed has been securely kept or delivered.

It would be absurd to suppose that an individual was bound to pay for the transportation of that, which he never had received; or that the depository ought not to be made liable for a tortious act, in relation to the thing deposited, without a tender of the necessary expenses or reward. The right to detain, wherever a lien exists, is unquestioned, but the mere right will not estop the inquiry into the fact, that the thing has been lost or destroyed.

The last objection taken to the declaration, is, that the fifth count is substantially a count in trover, and therefore bad. It is not perceived that this count, even if in trover, would be insufficient, as that action certainly would lie for money in a bag—Kettle vs Bromsell, (Willis, 118;) and we see no reason why it should not, for money or notes, sealed up in a letter.

But the case of Orton vs Butler, (5 Barn. & Ald. 652,) establishes no such principle as contended for. That

Moody *vs.* Keener.

was an attempt to introduce the action of trover for money, not distinguishable from any other money; and to substitute the action of trover, for that of money had and received.    In that case, it is admitted by the court, that the action would well lie for so many pieces of gold or silver.    There never was, nor can there ever be a serious question, but that trover can be brought for bank notes, if sealed up in a letter, as well as for money in a bag—(Bac. Ab. Trover, D.)

2. As to the admission of the evidence objected to—

It is contended, that a witness cannot be permitted to state that he is a public officer, without producing his commission, because the commission is better evidence of the appointment, than the assertion of the individual. There is nothing in this objection : it has been so often settled, that it is now at rest.    Even in cases affecting the lives of individuals, the rule is admitted to prevail— Berryman vs Wise, (4 Term. Rep. 366 ;) *Potter vs* Luther, (3 John. 431 ;)  Gordon's case, (1 East's P. C. 315 ;)  Reed vs Gillet, (12 John. 296.)

3. That no judgment could be legally rendered on the verdict of the jury, such as is stated in the record.

Before we consider this question, we may remark, that we are strongly impressed with the belief, that this verdict, in the words stated, was not returned by the jury which tried the cause; and that it is probably the act of the clerk, in making up the formal judgment on the minutes of the court.    If so, it could have been amended by the Circuit court, from the verdict itself.    But no such power exists in this court at this time, and whatever may be the facts as existing in the court below, we can only look to the record as we find it.

Moody *vs.* Keener.

The words of the verdict are, "on their oaths do say, that the defendant did undertake and assume upon himself in manner and form as the plaintiff hath complained, and they assess the plaintiff's damages, *by occasion of the defendant's non-performance of the said undertaking and assumptions, to one thousand and seventy-five dollars.*"

The utmost favor has always been extended to verdicts, and they are not construed strictly, as pleadings are; and we find this rule laid down — (Hob. 54.) "That though the verdict may not conclude formally and punctually in the *words of the issue*, yet if *the point in issue* can be concluded out of the finding, the court shall work the verdict into form, and make it serve."

In the case of Hawks vs Crifton, (2 Burr. 698,) on a writ of error upon a judgment of the King's Bench, in Ireland, in an action of trespass for assault and battery, the defendant pleaded not guilty, and *son assault:* to the latter plea, the plaintiff replied, *de injuria sua propria*, &c.—and issues were joined. The verdict was, "guilty of the trespass within written," and judgment rendered thereon. The judgment was affirmed, and the rule laid down in the case in Hobart, is cited with unqualified approbation. It will be observed, that here, by that plea, the *fact* of the assault was admitted, but there was also another issue on the plea of not guilty, so that there was a direct response to one of the pleas, and a verdict could not have been found for the plaintiff, unless the jury had negatived the defence set up by the defendant's plea of *son assault.*

Lord Mansfield says, "it is very clear what the jury meant, and the verdict ought not to be avoided, though

7 P.  30

the clerk may have been irregular faulty in point of form."

In the case of Porter vs Rumery, (10 Mass. 64,) the facts were, that the defendant to a writ of right, pleaded not guilty, and a plea of *non tuum* and disclaimer, to which the plaintiff replied that the defendant was in possession, and on which issue was joined, as well as on the plea of not guilty. On these issues, the jury returned a general verdict of not guilty: judgment was rendered for the defendant, and the plaintiff prosecuted his writ of error. It was held by the Supreme court of Massachusetts, that the judgment was well enough, for the jury could not have returned the verdict they did, unless they had also passed on the special issue.

The case of Fairfax's ex'r vs Fairfax, (5 Cranch, 19,) was an action of assumpsit against an executor—pleas *non assumpsit and plene administravit*, and issues thereon. The jury found a verdict, which was thus recorded: " We, the jury, find the issues for the plaintiff, and assess the damages to two hundred and twenty dollars, and ninety-five cents." Judgment was rendered on this verdict against the executor, *de bonis testatoris*. The Supreme court reversed the judgment, because it was not specially found what assets the defendant had to be administered. Verdicts rendered on the issue of *plene administravit* may be considered as an exception to the general rule, from the necessity which arises in the particular case of finding a special verdict for the amount of assets to be administered; as, if there was but ten dollars unadministered, the verdict must be for the plaintiff, but notwithstanding as to the balance beyond the sum

found administered, the judgment would only be *quando acciderunt*. Hence arises the necessity, in this particular case, for the great certainty required.

In the case of Patterson vs the United States, (2 Wheat, 221,) the action was debt, on a bond conditioned that certain merchandise, which had been imported into the United States, and re-shipped, should not be re-landed within the United States, and that the certificates and other proof of the delivery of the cargo at some place without the United States, should be produced at the collector's office at Baltimore, within one year,

The defendant, after oyer, pleaded—

1. Performance ;

2. That the merchandise was not re-landed within the United States, and certificates were produced, &c. ;

3. A similar defence.

The replication to the first plea, alleged a breach of the bond, by not producing proof, &c. as required by the condition ; to which there was a rejoinder and issue.

There was an issue also on the second plea,

To the the third, there was a demurrer, on which judgment was given for the United States.

On the issues, the jury returned this verdict : "That the within mentioned writing obligatory, is the deed of the within named Robert Patterson, &c. and they find there is really and justly due upon the said writing obligatory, the sum 23,989 dollars, and 58 cents." On this verdict judgment was rendered, which was reversed by the Supreme court ; and Judge Washington thus declares the rule : "A verdict is bad, if it varies from the issue in a substantial matter, or if it find only a part of that

which is in issue.   Whether the jury find a general or special verdict, it is their duty *to decide the very point in issue*, and although the court, in which the cause is tried, may give form to a general finding, so as to make it harmonise with the issue, yet, if it appears to that court, or to the appellate court, *that the finding is different from the issue*, or is confined to a part only of the matter in issue, no judgment can be rendered on the verdict."

"If the jury find the issue, and something more, the latter part of the finding will be rejected as surplusage; but this rule does not apply to a case where the facts found in a verdict are substantially variant from those which are in issue."

Unless these cases are attentively examined, they will seem to conflict with each other; but the seeming discrepancy vanishes, when the rule extracted from Hobart is analised.   It is not necessary that the verdict should conclude formally or punctually *to the words of the issue*, but the point in issue *must be ascertained out of the finding*.   In the cases from Burrow and Massachusetts Reports, this could be done, but it could not be done in the case from Wheaton.   The issue was, whether a particular act had been done; the jury found a different matter not in issue between the parties.

Let us now apply the rules, ascertained by these cases, to the present issue and verdict.   The charge against the defendant is *negligence*, and the issue is formed on that alone.   The jury, instead of finding this issue, return a verdict that the defendant *undertook and assumed* on himself, in manner and form as the plaintiff had complained, and they assess the plaintiff's damages, by oc-

casion of the defendant's *non performance of the said undertakings and assumptions,* at, &c. Now, can we conclude the *point* in issue, out of this finding? We cannot, without saying that we will presume the fact, from the mere circumstance that a trial has been had, and a verdict returned. The *point in issue* was the *negligence* of the defendant, and this we cannot g her from the words of the verdict. The facts found are (to use the words of Judge Washington,) substantially variant from those which are in issue.

Another rule might be given which will very sattsfactorily determine that this verdict is had.

A verdict to sustain a judgment must be such as an appellate court will direct an inferior tribunal to enter judgment upon. If this rule is founded in principle, (and that it is we cannot doubt,) let the case be supposed of a verdict such as this actually returned, and the court considering it as variant from, or no answer to the issue, refuse to enter judgment on it, ought an appellate court to compel them so to do, by mandamus or otherwise? We think it assuming a greater latitude of construction than has ever obtained.

The view we have taken is also confirmed by the case of Steans vs Burrell, (1 Mason, 153,) in which Judge Story observes, "that where a verdict is not expressed substantially in the terms of the issue, the case ought to be extremely clear, that should induce a court to make it the ground of a final judgment." As the verdict is not responsive to the issue for this defect, the judgment of the Circuit court must be reversed, and the cause remanded.