This appeal arises from a dispute over royalties under an oil and gas lease. The plaintiffs, John W. Covington III and Linda T. Covington (hereinafter the "Covingtons"), sued their lessee, Ben R. Martin, Jr., and Exxon Company, U.S.A. (hereinafter "Exxon"), the operator of the gas well. The Covingtons claimed that the defendants acted wrongfully in placing their royalty interest in a suspense status based upon an attorney's title opinion that stated that an ambiguity existed in a deed as to the ownership of the mineral interests. The trial court granted Exxon's motion for directed verdict. The Covingtons appeal from a judgment based on that directed verdict. We affirm.
On August 23, 1974, the Covingtons purchased a fee simple interest in a residential lot and house in Satsuma, Alabama. On March 14, 1975, the Covingtons leased the oil, gas, and mineral rights to James E. Mattei. Mattei acquired all mineral development rights and assumed responsibility of making royalty payments to the Covingtons. The Covingtons were to receive one-eighth of the revenues derived from minerals attributable to their property.
On October 11, 1975, Ben Martin purchased from Mattei the Covingtons' mineral lease. Martin acquired the right to receive working interest revenues for the lot and assumed the obligation to pay the Covingtons their one-eighth interest.
On January 2, 1979, the Covingtons sold their lot to Joe and Brenda Havard. The Covingtons conveyed their lot to the Havards by warranty deed. The Covingtons argue that they intended to keep the mineral rights because of the oil and gas exploration occurring in the Mobile area at the time.
Exxon was the operator of a gas well known as the Wilkie Gas Unit. Exxon contacted the working interest owners and obtained permission to drill the well from 86.25% of the owners. Exxon subsequently *Page 937 
obtained permission from the Oil and Gas Board for forced pooling as to the remaining interest owners.
Exxon was obligated to pay out working interest revenues to the well's non-operating working interest owners. The working interest owners were required to share in the expenses with the development of the well.
Exxon offered to make royalty payments on behalf of the working interest owners. In a letter dated December 22, 1981, to approximately 795 royalty interest owners, Exxon set forth its conditions for making royalty payments. Ben Martin received this letter as the non-operating working interest owner of the Covingtons' lot. The first condition was that the non-operator was required to give Exxon an indemnity agreement. Additionally, the non-operator was required to furnish Exxon with a title opinion identifying the ownership of the working, overriding royalty and royalty interests.
Ben Martin retained counsel to prepare the necessary title opinions for him to comply with Exxon's request. Martin's counsel concluded that he was unable to identify the royalty interest owner due to an ambiguity in the deed from the Covingtons to the Havards. Because of this ambiguity in the deed, the title opinion advised Martin not to make the royalty payments and to hold those funds in suspense. Martin instructed Exxon to hold the royalty payments in suspense.
The Covingtons filed suit against Martin and Exxon, claiming that the defendants acted wrongfully in placing the royalty interest in a suspense status based upon an attorney's title opinion which stated that the deed from the Covingtons to the Havards created an ambiguity as to the ownership of the mineral rights. The Covingtons' complaint asserted claims of fraud and conversion against Exxon and claims of slander of title, intentional interference with contractual relations, and breach of contract against Martin.
Exxon brought the Havards into the case by filing a counterclaim and a cross-claim for interpleader. Exxon subsequently paid the disputed royalties into court. The Covingtons moved for partial summary judgment on the ground that they had properly reserved the mineral interests in their deed to the Havards. The court ordered that the funds that Exxon paid into court be turned over to the Covingtons, and provided that future royalty payments should be made directly to the Covingtons.
The Covingtons amended their complaint several times, but at the commencement of trial only the conversion of oil, conversion of royalty payments, interference with business relations, and slander of title claims remained against Exxon. At the close of the plaintiffs' case, the Covingtons struck the conversion of oil and interference with business relations claims. The court granted Exxon's motion for directed verdict on the slander of title claim. The only claim remaining against Exxon was the claim for conversion of royalty payments.
At the conclusion of all the evidence, Exxon again moved for a directed verdict. The court granted Exxon's motion as to the conversion claim, the only count still remaining as to Exxon. After the trial court granted Exxon's motion for directed verdict, the Covingtons sought to amend their complaint to conform to the evidence, charging Exxon with unlawfully withholding the royalty payments and with wanton injury. The trial court denied the Covingtons' amendment to conform to the evidence.
The case was submitted to the jury on the remaining breach of contract and slander of title claims against Ben Martin. The jury returned a verdict against Martin and awarded damages in the amount of $50,000. The judgment as to Martin was subsequently reduced and paid in full pursuant to a pro tanto release. Martin is not a party to this appeal.
The following issues are raised on appeal:
1. Did the trial court err in granting Exxon's motion for directed verdict on the Covingtons' claim for conversion of royalty payments? *Page 938 
2. Did the trial court abuse its discretion when it refused to allow the Covingtons to amend their complaint to conform to the evidence after the court had granted Exxon's motion for directed verdict?
 I.
The Covingtons first argue that the trial court committed reversible error when it granted Exxon's motion for directed verdict as to their conversion claim. The standard of review of a directed verdict is that if a scintilla of evidence exists favorable to the nonmovant, the motion will be denied. BurtBoiler Works, Inc. v. Snowden, 510 So.2d 173 (Ala. 1987);Stauffer Chemical Co. v. Buckalew, 456 So.2d 778 (Ala. 1984). A directed verdict can be correctly granted "where there is a complete absence of proof of a material issue or where there are no controverted questions of fact on which reasonable people could differ." Deaton, Inc. v. Burroughs, 456 So.2d 771,775 (Ala. 1984).
To constitute conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse of another's property. Ex parte SouthTrust Bank of Alabama, N.A.,523 So.2d 407, 408 (Ala. 1988); Ott v. Fox, 362 So.2d 836 (Ala. 1978). Conversion requires "a wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has . . . the immediate right to possession." Empiregas of Gadsden, Inc. v. Geary,431 So.2d 1258, 1260 (Ala. 1983).
Generally, an action will not lie for the conversion of cash. However, if the cash at issue is "specific money capable of identification," claims of conversion may be appropriate.Hunnicutt v. Higginbotham, 138 Ala. 472, 35 So. 469 (1903);Russell v. The Praetorians, Inc., 248 Ala. 576, 28 So.2d 786
(1947).
In Lewis v. Fowler, 479 So.2d 725 (Ala. 1985), this Court discussed at length the circumstances under which an action for conversion will lie to recover a sum of money. Specifically, we said:
 "Now, in conversion cases, the courts are not confronted so much with a particular piece of money, i.e., a coin or a bill, but with identified or segregated sources from which money has come or types of accounts into which money has been deposited.
 "Money paid by an insurance company to a hospital which had been assigned to the hospital by the plaintiff has been determined as a matter of law not to be specific property which would support an action of conversion. Humana of Alabama, Inc. v. Rice, [380 So.2d 862 (Ala.Civ.App. 1979), cert. denied, 380 So.2d 864 (Ala. 1980)]. Shares in a 'Ready Assets Trust Account' which must be redeemed for cash and on which checks can be written have been held to be sufficiently identifiable to support an action in conversion. Limbaugh v. Merrill Lynch, Pierce, Fenner Smith, Inc., 732 F.2d 859 (11th Cir. 1984) (citing Alabama law).
". . . .
 "In this case, the Court is being asked to determine whether money which was withheld from wages of an employee by an employer in response to a garnishment filed against the employer by a creditor of the employee is specific property which will support an action in conversion. Clearly, there is no identifiable coin or bill, and nothing that has been sealed up in a particular letter, 'wrapped up to itself,' or placed in a bag or chest. There is no evidence that this money was placed in a special account. It is merely money which was not paid to an employee or to the creditor of an employee, but was withheld from an employee's wages in response to a garnishment."
479 So.2d at 726-27. (Emphasis added). The trial court granted Exxon's motion for directed verdict on the basis that the royalties were not physically separated or segregated, and, therefore, not specific money capable of identification.
In Estate of Jackson v. Phillips Petroleum Co., 676 F. Supp. 1142
(S.D.Ala. 1987), the court held that funds held by a buyer of hydrocarbons in an escrow account upon *Page 939 
the instructions of the unit operator, Phillips Petroleum, were "specific money capable of identification" and could be subject to conversion under Alabama law. In Jackson, supra, a dispute arose over the expenses charged the working interest owners in the production of hydrocarbons. The plaintiffs, working interest owners, contended that the expenses were not unit expenses. Defendant, Phillips Petroleum sought to recoup these expenses and invoked a lien against the proceeds of plaintiffs' sale of hydrocarbons to a third party. Phillips Petroleum instructed the third party to withhold payments to plaintiffs. Plaintiffs sought damages on several theories, including conversion of their diverted funds.
The court concluded that the funds were sufficiently identified under Alabama law to be converted. The evidence revealed that the third party escrowed the funds upon receiving the defendant's instructions to withhold them. Therefore, the funds were "segregated from all other funds in the universe and constituted specific money capable of identification."Id. at 1147.
In the present case, the Covingtons argue that because each interest owner had its own account number, this sufficiently constituted "specific money capable of identification." During the time the royalty funds were held in suspense, the monies attributable to Exxon's royalty owner accounts were located in numerous banks nationwide. The funds in these accounts are commingled. The Covingtons' royalty funds were never segregated into a separate account.
For the foregoing reasons, we conclude that the royalty funds were not sufficiently identified to be converted. The trial court correctly granted Exxon's motion for directed verdict on the Covingtons' claim for conversion.
 II.
The Covingtons next argue that the trial court abused its discretion when it refused to allow them to amend their complaint to conform to the evidence. The Covingtons' amendment alleged that Exxon unlawfully and without just cause held in its possession royalty payments belonging to the Covingtons, and, after demand was made, wantonly injured the plaintiffs by refusing to deliver to them royalty payments and depriving them of the use of their funds. A review of the record in this case indicates that the trial court did not abuse its discretion in refusing to allow the Covingtons to amend their complaint.
The Covingtons argue that the trial court erred in failing to amend the pleadings in accordance with Rule 15(b), Alabama Rules of Civil Procedure.
 "Although amendments are to be liberally granted, the trial court is given discretion in the exercise of that liberality. Thus, where the trial on the issues will be delayed or prejudice would result to the opposing party, the trial court may deny the leave to amend."
Dean v. Sfakianos, 472 So.2d 1009, 1011 (Ala. 1985) citingStallings v. Angelica Uniform Co., 388 So.2d 942 (Ala. 1980). Rule 15(b) provides:
 "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in the maintaining of his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence. An amendment shall not be refused under subdivisions (a) and (b) of this rule solely because it adds a claim or defense, changes a claim or defense, or works a complete change in parties. The court is to be liberal in granting permission to amend when justice so requires." *Page 940 
In DeBuys v. Jefferson County, 511 So.2d 196 (Ala.Civ.App. 1987), the trial court, after ore tenus proceedings, entered judgment in favor of the defendant. The plaintiff had sued the county, alleging denial of due process after his application for a sewer permit had been turned down. After the court had entered judgment in favor of the defendant, the plaintiff attempted to amend to state a claim under 42 U.S.C. § 1983. The plaintiff argued that the evidence establishing the § 1983 claim was presented at trial.
The Court of Civil Appeals affirmed the trial court's refusal to allow the proposed amendment. Id. at 200. The court observed:
 "The complaint already stated a cause of action for the alleged denial of due process by the County, the same claim that [the plaintiff] sought to make the basis of a § 1983 cause of action. Any evidence introduced in support of that claim would understandably have been considered by the County as pertaining to [the plaintiff's] original due process contentions, and, therefore, the County would not have objected to such evidence.
 "Under such circumstances we do not think the County's consent to the trial of [the plaintiff's] § 1983 claim should be implied or that the trial court erred in failing to amend the pleadings in accordance with Rule 15(b). . . ."
Id.
Exxon argues that Rule 15(b) does not allow a plaintiff to resurrect a dead claim by renaming it as a new cause of action based upon the exact same evidence as that relied upon for the original claim. We agree. Indeed, the Covingtons have stated that the amendment was another way of stating the same facts that could have been used to support their conversion count.
The only instance in which refusal to allow amendment can be justified is where the amendment and the evidence will not assist in reaching the merits of the action. See Wright 
Miller, Federal Practice Procedure, Civil § 1495 (1971). A review of the record in this case indicates that the trial court did not abuse its discretion in refusing to allow the Covingtons' amendment, due to the prejudice.
For the foregoing reasons, we conclude that the Covingtons' attempt to amend their complaint to conform to the evidence to state a claim for wanton refusal to pay royalties was merely a revival of the conversion claim on which a verdict had been directed. The trial court correctly refused to grant the Covingtons' amendment.
For the foregoing reasons, the judgment is affirmed. The appellee's motion to dismiss is denied.
MOTION TO DISMISS DENIED; AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.