The plaintiff, Greene County Board of Education, appeals from the dismissal of its complaint alleging conversion on the part of the defendants, Roland S. Bailey; Sarah N. Bailey; Pelham E. Brittain; Alabama Institutional Foods, Inc.; Joseph L. Wilson; Shelia G. Holland; and First National Bank of Tuskaloosa d/b/a AmSouth Bank of Tuscaloosa. We reverse and remand.
The plaintiff's complaint reads, in pertinent part, as follows:
 "The Greene County Board of Education is an entity of the State of Alabama charged with the general administration and supervision of schools in Greene County.
 "Upon information and belief, Roland S. Bailey is a resident of Tuscaloosa County, Alabama. From 1970 to 1984 defendant Roland S. Bailey was an employee of defendant Alabama Institutional Foods, Inc (AIF).
 "Upon information and belief, Sarah N. Bailey is a resident of Tuscaloosa County, Alabama. From 1970 through 1984 defendant Sarah Bailey was an employee of the First National Bank of Tuskaloosa.
 "Defendant Pelham E. Brittain was at all relevant times president of Alabama Institutional Foods.
 "Defendant First National Bank of Tuskaloosa, now known as AmSouth Bank, and defendant Merchants Farmers Bank of Greene County[1] wrongfully cashed checks for defendant Bailey and thereby aided Bailey in his fraudulent and wrongful scheme to deprive Greene County of its funds and resources.
 "Defendant . . . AIF is an Alabama corporation doing business with Paramount High School in Greene County, Alabama. Prior to its incorporation in the early 1970s, AIF constituted the institutional foods sales division of Peco Foods, Inc.
 "Defendant Joseph L. Wilson was the principal of Paramount High School at all relevant periods pertinent to this complaint and was charged with the responsibility of managing and monitoring Paramount *Page 895 
High School's Nutrition Program, including the lunchroom purchases and payments of food items.
 "Defendant Shelia G. Holland was secretary to the principal of Paramount High School during the relevant period. Her primary duties included the maintenance of vendor bills for lunchroom purchases, and arranging payments of said purchases.
". . . .
 "The Greene County Board of Education school system consists of three elementary schools, two high schools, and one vocational school, to-wit: Birdine Elementary, Carver Elementary, Eatman Elementary, Paramount High School, Eutaw High School, and Peter Kirksey Vocational School.
 "During the year 1972-1984 inclusive, Paramount High School participated in both the National School Lunch Program (NSLP) and the National School Breakfast Program (NSBP). Each of these programs was funded by the United States Department of Agriculture (USDA) through the Food and Nutrition Service (FNS).
 "At the state level, each of the food programs previously mentioned was administered by the State Department of Education.
 "Each participating school was responsible for providing both the facilities and trained personnel to serve the meals.
 "At all relevant times the local school principal and his staff were responsible for all transactions involved in the purchase, payment, inventory, and accountability for food purchases made.
 "All meals served were required to meet minimum federal requirements and each school was required to maintain complete and accurate records of meals served for eligible children attending participating schools.
 "Participating schools were required to submit a monthly claim for reimbursement to the State Department of Education in order to receive payment [for] meals served to eligible students.
 "In order to receive reimbursement from the USDA for meals served under the programs, the sponsor must maintain sufficient records to substantiate allowable costs claimed.
 "Paramount High School kept various records and continuing inventory of foods in the lunchroom; a record of specific ingredients used in the preparation of breakfasts and lunches; the cost of preparing each meal; the number of meals served free, at reduced charge, or at the full price.
 "During the relevant period, 1972-1984, Roland S. Bailey was employed by defendant [AIF] as sales manager and was directly involved with the sale of food products to Paramount High School.
 "During the period of October 12, 1972, through March of 1980, defendant Bailey purchased eighty-four (84) money orders and cashier's checks from the Merchants Farmers Bank of Eutaw, utilizing forty-four (44) checks drawn on the Paramount lunchroom account.
 "Of these 84 money orders, 42 were negotiated through the defendant AIF company's account at the First National Bank of Tuskaloosa (FNB), now doing business as AmSouth Bank in Tuscaloosa.
 "The remaining 42 money orders bore the endorsement of either Peco Foods, Inc. by P.E. Brittain or Ala. Institutional Foods, Inc., by P.E. Brittain. None of the proceeds from these items were reflected in . . . AIF records as being received by the company.
 "Each of the latter 42 money orders was wrongfully cashed at the FNB, Tuscaloosa, by defendant Sarah Bailey.
 "The eighty-four (84) money orders purchased by defendant Bailey had a total value of four hundred seven thousand eight hundred eighty three and 50/100 [dollars] ($407,883.50). Of that figure, only two hundred sixty three thousand four hundred twenty five . . . and 65/100 [dollars] ($263,425.65) was received by defendant AIF for payment of food products sold to Paramount. The remaining one hundred forty four thousand four hundred fifty seven . . . and 85/100 [dollars] *Page 896 
($144,457.85) was not credited to Paramount's account and not utilized in the feeding programs.
 ". . . [D]efendant Bailey submitted false invoices to Paramount in order to receive the funds used to purchase the forty two (42) checks cashed at the FNB (now AmSouth Bank), Tuscaloosa, by defendant Sarah Bailey during the period 1972-1980.
 "Defendant AIF invoice registers revealed numerous invoices purporting [to evidence] sales to the Paramount lunchroom. Likewise, 'credit memos' of total equal monetary value were prepared effectively canceling the original transaction from AIF records.
 "A comparison of AIF data with Paramount records revealed that customer copies of the canceled invoices were furnished to Paramount; however, the canceled invoices were not included on AIF billing statements to Paramount. Their equivalent value was included along with payment for actual purchases and lunchroom checks issued to AIF.
 "Defendants Bailey and his co-conspirators' scheme to defraud [was] designed to hide said wrongful conduct, and designed to mislead and lull plaintiff from discovery of said wrongdoing.
 "The person directly charged with the day-to-day issuance of payments of Paramount High School was defendant Shelia G. Holland.
 "Paramount lunchroom's perpetual inventory and production records revealed that the products sold, as represented by the above-described invoices, were neither received nor utilized by the Paramount lunchroom.
 "Paramount lunchroom checks drawn at a school account at Merchants Farmers Bank, payable to defendant . . . AIF, for the period of March 1982 through April of 1983 revealed two distinctly different endorsements. The majority of the checks bore the endorsement 'For Deposit Only Alabama Institutional Foods, Inc.' The checks bearing this endorsement were negotiated and applied to the Paramount account at AIF.
 "A second style of endorsement on Paramount checks paid to AIF bore the endorsement 'Alabama Institutional Foods R.S. Bailey' or 'Alabama Institutional Foods Swanson Bailey.' The Paramount checks bearing this endorsement were not credited or applied to Paramount's account at AIF.
 "There were five checks bearing this second endorsement totaling sixty eight thousand six hundred forty two . . . and 81/100 [dollars] ($68,642.81). Each of these checks [was] wrongfully negotiated at the Merchants Farmers Bank in Eutaw.
 "In addition to the foregoing, defendant Bailey used Paramount's checks payable to AIF to purchase money orders payable to AIF. Ten of the money orders thus purchased bore two distinctly different endorsements.
 "Five of the money orders bore the stamped endorsement 'For Deposit Only, Alabama Institutional Foods, Inc.' These money orders were negotiated and applied to Paramount's account at AIF.
 "The remaining five money orders bore the endorsement: 'Alabama Institutional Foods by P.E. Brittain.' The money orders bearing the latter endorsement were not credited to or applied against the Paramount account at AIF.
 "These latter money orders amounted to a total of sixteen thousand two hundred sixty eight . . . and 73/100 [dollars] ($16,268.73). Each of these money orders [was] cashed by Sarah Bailey while she worked as head teller of the Skyland branch of the Tuscaloosa FNB (now AmSouth Bank).
 "From December of 1980 through May 1983, AIF by defendant Swanson Bailey submitted ten invoices that purported [to evidence] sales to the Paramount lunchroom. Each of the invoices appeared on AIF's billing statement to Paramount and was paid for by Paramount; however, no record of the purported products' receipt or utilization by the lunchroom could be identified.
 "Payment of the latter invoices for which no products were received amounted *Page 897 
to a total of nine thousand three hundred sixty five . . . and 98/100 [dollars] ($9,365.98).
 "From 1972-1980 and 1982-1983, the Merchants 
Farmers Bank of Eutaw wrongfully negotiated checks made payable to Defendant [AIF] without inquiring whether Bailey was authorized to cash the checks. The plaintiff avers that either the bank and/or the agent cashing the checks was part of the scheme to defraud plaintiff. Negotiation of the checks to persons other than the identified payee was contrary to bank policy and aided defendant in his scheme to defraud plaintiff and conceal said embezzlement from plantiff.
 ". . . [D]efendant Bailey's scheme to defraud plaintiff could not be effected without the knowledge and active participation of defendant Shelia Holland and defendant Wilson. Defendants Wilson and Holland actively participated with Bailey to keep the scheme hidden from plaintiff in order to avail themselves of the embezzled funds.
 ". . . [D]efendants Roland S. Bailey, Sarah Bailey, Joseph Wilson, . . . Shelia G. Holland, Pelham E. Brittain, [AIF], Merchants Farmers Bank of Eutaw, and First National Bank of Tuskaloosa, now known as AmSouth Bank, acted in concert to effect the above-stated acts, which resulted in the fraudulent, wrongful, or illegal taking and interference of funds . . . of the Greene County Board of Education.
". . . .
 "The above-cited acts of defendant Roland S. Bailey constitute a wrongful taking, detention, and interference of the funds or resources of the Greene County Board of Education.
 "The above-cited acts of defendant Roland S. Bailey constitute an illegal assumption of ownership or illegal use or misuse of the funds and resources of the Greene County Board of Education.
 ". . . [T]he remaining defendants . . . acted in concert with defendant Roland S. Bailey in effecting the aforementioned acts and/or wrongfully assisted Roland S. Bailey in the act of conversion."
The defendants moved to dismiss the complaint under Rule 12(b)(6), Ala.R.Civ.P., on the ground that it failed to state a claim upon which relief could be granted. Specifically, the defendants argued that the plaintiff had failed to allege that specific money capable of identification had been converted. The trial court granted the defendants' motion, stating, in pertinent part, as follows:
 "The plaintiff contends that the defendants converted money; however, the money was not any specific money and [the complaint states] a general claim for relief. The plaintiff's theory is that the defendants wrongfully obtained money from the account of the plaintiff through a scheme of false invoices. No particular identifiable earmarked money is alleged to have been taken. Under these circumstances, this Court is of the opinion that a count for conversion is not appropriate."
We disagree.
The standard by which the plaintiff's complaint in this case must be reviewed is well established:
 "It is a well-established principle of law in this state that a complaint, like all other pleadings, should be liberally construed, Rule 8(f), Ala.R.Civ.P., and that a dismissal for failure to state a claim is properly granted only when it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief. Winn-Dixie of Montgomery, Inc. v. Henderson, 371 So.2d 899 (Ala. 1979). Stated another way, if under a provable set of facts, upon any cognizable theory of law, a complaint states a claim upon which relief could be granted, the complaint should not be dismissed. Childs v. Mississippi Valley Title Insurance Co., 359 So.2d 1146 (Ala. 1978).
 "Where a [Rule] 12(b)(6) motion has been granted and this Court is called upon to review the dismissal of the complaint, we must examine the allegations contained therein and construe them so as to resolve all doubts concerning the sufficiency of the complaint in favor of *Page 898 
the plaintiff. First National Bank v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258 (Ala. 1981). In so doing, this Court does not consider whether the plaintiff will ultimately prevail, only whether he has stated a claim under which he may possibly prevail. Karagan v. City of Mobile, 420 So.2d 57
(Ala. 1982)."
Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala. 1985). (Emphasis in original.)
To constitute conversion, there must be a wrongful taking or wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse of another's property. The gist of the action is the wrongful exercise of dominion over property to the exclusion or in defiance of a plaintiff's rights, where the plaintiff has a general or special title to the property or the immediate right to possession. Ex parteSouthTrust Bank of Alabama, N.A., 523 So.2d 407 (Ala. 1988).
Generally, an action will not lie for the conversion of money. However, if the money at issue is capable of identification, then a claim of conversion may be appropriate. In Lewis v. Fowler, 479 So.2d 725, 726 (Ala. 1985), this Court discussed at length the circumstances under which an action for conversion will lie to recover a sum of money:
 " ' "[T]rover lies for the conversion of 'earmarked' money or specific money capable of identification, e.g., money in a bag or coins or notes which have been entrusted to defendants' care." ' Hunnicutt v. Higginbotham, 138 Ala. 472, at 475, 35 So. 469, at 470 (1903) (quoting from 21 Enc.Pl. Prac., 1020, 1021). See also Moody v. Keener, 7 Port. 218 (Ala. 1838), and Humana of Alabama, Inc. v. Rice, 380 So.2d 862
(Ala.Civ.App. 1979), cert. denied, 380 So.2d 864 (Ala. 1980).
 "Money in any form is generally regarded and treated as property, and it is well settled that an action will lie for the conversion thereof, where there is an obligation to keep intact and deliver the specific money in question, and where such money can be identified. Moody v. Keener, supra (money sealed up in a particular letter); Hunnicutt v. Higginbotham, supra ($180 in $20 gold pieces and $102 in paper money which was 'wrapped up to itself' and placed in a safe). In England, it was first held that money could not be converted so as to support an action in trover unless it was in a 'bag or chest.' Holliday v. Hicks, 78 Eng.Rep. 878, 900 (1599).
 "The requirement that there be 'earmarked money or specific money capable of identification' before there can be a conversion has been complicated as a result of the evolution of our economic system.
 "Now, in conversion cases, the courts are not confronted so much with a particular piece of money, i.e., a coin or a bill, but with identified or segregated sources from which money has come or types of accounts into which money has been deposited.
 "Money paid by an insurance company to a hospital which had been assigned to the hospital by the plaintiff has been determined as a matter of law not to be specific property which would support an action of conversion. Humana of Alabama, Inc. v. Rice, supra. Shares in a 'Ready Assets Trust Account' which must be redeemed for cash and on which checks can be written have been held to be sufficiently identifiable to support an action in conversion. Limbaugh v. Merrill Lynch, Pierce, Fenner Smith, Inc., 732 F.2d 859 (11th Cir. 1984) (citing Alabama law).
 "Section 7 of the Annotation, 'Nature of property or rights other than tangible chattels which may be subject of conversion,' 44 A.L.R.2d 927 (1926), lists numerous cases in which attempts have been made to recover for the conversion of money.
 "In this case, the Court is being asked to determine whether money which was withheld from wages of an employee by an employer in response to a garnishment filed against the employer by a creditor of the employee is specific property which will support an action in conversion. *Page 899 
Clearly, there is no identifiable coin or bill, and nothing that has been sealed up in a particular letter, 'wrapped up to itself,' or placed in a bag or chest. There is no evidence that this money was placed in a special account. It is merely money which was not paid to an employee or to the creditor of an employee, but was withheld from an employee's wages in response to a garnishment."
(Emphasis added.)
As this Court recognized in Lewis, the evolution of our economic system has resulted in courts' today being asked more often than not to determine whether money traceable to identified or segregated sources or accounts can be the subject of a conversion action. Although Lewis did not involve money that was traceable to a special account,[2] this Court, citingLimbaugh v. Merrill Lynch, Pierce, Fenner Smith, Inc.,732 F.2d 859 (11th Cir. 1984), recognized that money directly traceable to a special account is sufficiently identifiable to support an action for conversion. More recently, in Covingtonv. Exxon Co., U.S.A., 551 So.2d 935 (Ala. 1989), this Court, discussing Lewis, again recognized that money traceable to a special account is sufficiently identifiable to support an action for conversion. In addition, this Court in Covington
cited with approval Estate of Jackson v. Phillips PetroleumCo., 676 F. Supp. 1142 (S.D.Ala. 1987):
 "In Estate of Jackson v. Phillips Petroleum Co., 676 F. Supp. 1142 (S.D.Ala. 1987), the court held that funds held by a buyer of hydrocarbons in an escrow account upon the instructions of the unit operator, Phillips Petroleum, were 'specific money capable of identification' and could be subject to conversion under Alabama law. In Jackson, supra, a dispute arose over the expenses charged the working interest owners in the production of hydrocarbons. The plaintiffs, working interest owners, contended that the expenses were not unit expenses. Defendant, Phillips Petroleum, sought to recoup these expenses and invoked a lien against the proceeds of plaintiffs' sale of hydrocarbons to a third party. Phillips Petroleum instructed the third party to withhold payments to plaintiffs. Plaintiffs sought damages on several theories, including conversion of their diverted funds.
 "The court concluded that the funds were sufficiently identified under Alabama law to be converted. The evidence revealed that the third party escrowed the funds upon receiving the defendant's instructions to withhold them. Therefore, the funds were 'segregated from all other funds in the universe and constituted specific money capable of identification.' Id. at 1147."
551 So.2d at 938-39. This Court went on to hold inCovington, as it had in Lewis, that, under the particular facts of that case, the money at issue was not sufficiently identifiable to support a conversion action:
 "In the present case, the Covingtons argue that because each interest owner had its own account number, this sufficiently constituted 'specific money capable of identification.' During the time the royalty funds were held in suspense, the monies attributable to Exxon's royalty owner accounts were located in numerous banks nationwide. The funds in these accounts are commingled. The Covingtons' royalty funds were never segregated into a separate account.
 "For the foregoing reasons, we conclude that the royalty funds were not sufficiently identified to be converted."
551 So.2d at 939.
Applying the applicable standard of review to the present case, we are not persuaded that the plaintiff has failed to state a claim for conversion. The allegations of the complaint suggest that the plaintiff may be able to prove that the defendants, through an intricate scheme involving bogus invoices and checks and money orders, converted to their own use funds that had been specifically deposited in the "[Paramount *Page 900 
High School] lunchroom account" to pay for the high school's breakfast and lunch programs. Although the defendants cite us to a number of cases in which this Court held that conversion would not lie to recover certain funds, those cases are distinguishable in that they did not involve funds that were directly traceable to a special account.
Based on the foregoing, we hold that the plaintiff has stated a claim for conversion and, therefore, that the trial court's order dismissing the plaintiff's complaint is due to be reversed and the case remanded for further proceedings.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] The Merchants and Farmers Bank of Greene County was dismissed by a stipulation of the parties and is not a party to this appeal.
[2] Lewis involved a debtor-creditor relationship between the plaintiff and the defendant. That relationship formed the alternative basis for this Court's holding that the plaintiff's conversion action would not lie.