John McClanahan, an agent of United Insurance Company of America ("United"), sold a life insurance policy to John Huff, providing coverage for both John Huff and his wife, Mary Huff. When Mr. Huff died, United denied payment of benefits under the policy, because Mr. Huff had made misstatements about his health on the policy application. Mrs. Huff sued United and McClanahan, alleging fraud, breach of contract, bad faith refusal to pay, and other claims. The trial court entered a final summary judgment in favor of United and McClanahan on all claims, except for her negligence and/or wantonness claims. Mrs. Huff[1] appeals from the judgment as to her claims alleging fraud.
On a motion for summary judgment, the burden is initially on the movant to make *Page 22 
a prima facie showing that there is no genuine issue of material fact (i.e., that there is no dispute as to any material fact), and that the movant is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; McClendon v.Mountain Top Indoor Flea Market, Inc., 601 So.2d 957
(Ala. 1992); Elgin v. Alfa Corp., 598 So.2d 807 (Ala. 1992). "The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact." McClendon, at 958.
Rule 56 must be read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a defendant's properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). This Court reviews the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc.,613 So.2d 359 (Ala. 1993).
In early 1993, McClanahan made several visits to Mr. and Mrs. Huff's home for the purpose of selling a United life insurance policy. According to Mrs. Huff, McClanahan's sole communication with her about the policy was to speak with her about the cost of potential premiums on the policy; she said McClanahan gave her no other information. At that time, Mrs. Huff, apparently speaking for both herself and Mr. Huff, told McClanahan that they were not interested in purchasing the policy. However, Mr. Huff later, without Mrs. Huff's knowledge, bought a policy from McClanahan providing life insurance coverage for both himself and Mrs. Huff. The policy application contained questions concerning both his and Mrs. Huff's health. No health problems for either were indicated on the completed application. However, Mr. Huff had previously been treated for heart problems, while Mrs. Huff had suffered from diabetes and its complications, including blindness. The application appeared to be signed by both Mr. and Mrs. Huff. Mrs. Huff denies that she signed the application; however, she also states that she had authorized Mr. Huff to sign her name for her in the past, because of her blindness. Concerning her knowledge of the circumstances surrounding the purchase of the policy, Mrs. Huff responded as follows:
 "Q. . . . Do you remember any application for life insurance with United?
"A. No.
 "Q. So there is no way for you to tell us what your husband might have told Mr. McClanahan?
"A. No.
 "Q. And there's no way for you to tell us what Mr. McClanahan might have told your husband?
"A. No.
 "Q. And you didn't tell Mr. McClanahan anything, did you?
"A. I did not.
"Q. And he didn't tell you anything?
 "A. No. He just explained to me about the premium of the insurance.
 "Q. But that was sometime before when you told him that you didn't want any insurance, is that right?
"A. Right.
 "Q. So, Mr. McClanahan never did tell you anything about this policy, which was actually issued, did he?
"A. No.
". . . .
 "Q. [McClanahan] didn't tell you anything about this policy that was issued that was untrue, did he?
"A. No.
 "Q. He just didn't tell you anything one way or another, right?
"A. No. That's right, yes."
Shortly after United issued the policy, Mr. Huff died of a heart attack. Mrs. Huff learned of the policy after his death, and she submitted a claim for the policy's death benefit. Upon investigating Mr. Huff's medical *Page 23 
history, United discovered his medical records indicating cardiovascular disease and refused to pay the death benefit. Mrs. Huff then filed this action.
A prima facie fraud claim has at its heart a misrepresentation concerning a material fact, either by an affirmative statement or act, or by a concealment or suppression. Reynolds v. Mitchell, 529 So.2d 227 (Ala. 1988);Cowen v. M.S. Enterprises, 642 So.2d 453 (Ala. 1994). The fraud claims asserted here are based only upon an alleged fraud directed towards Mrs. Huff. Consequently, an alleged misrepresentation must have been made to, and relied upon by, Mrs. Huff, or else facts must have been concealed from her that United and McClanahan had a duty to disclose. North CarolinaMut. Life Ins. Co. v. Holley, 533 So.2d 497 (Ala. 1987); Crowderv. Memory Hill Gardens, Inc., 516 So.2d 602 (Ala. 1987).
This fact situation illustrates an all-too-common situation for Alabamians in life insurance transactions. United issued the policy without investigating the applicants' health. As the law in Alabama currently stands, an insurance company may issue a life insurance policy with its knowledge of its applicant's health coming solely from its agent's questioning of the applicant about his or her health history. The benefits from this type of transaction lie solely in favor of the insurance company and its agent. The insurance company receives premiums month after month, while the agent retains a commission from the sale. But when the insured dies, the insurance company refuses to pay the benefits provided by the policy. Its refusal is based upon its discovery, for the first time, that the insured's health was poor. When the policy is sold, an agent is not required to delve thoroughly into the applicant's background for the details of his health history. Such a requirement could prevent situations like the one in this case.
In Miller v. Dobbs Mobile Bay, Inc., 661 So.2d 203
(Ala. 1995), this Court held that an insurance company was bound by the actions of its agent, when the agent knew of the applicant's adverse health history and yet sold the policy without regard to that knowledge. As was adeptly stated by the Mississippi Supreme Court in Southern United Life Ins. Co. v.Caves, 481 So.2d 764, 768 (Miss. 1985), an insurance company "manifests an intention to 'insure the world' " when, with no effort to establish guidelines for its agents, it merely relies on its agents' judgment to ascertain the health of applicants when deciding whether to issue a policy. There was no evidence that McClanahan specifically knew of Mr. Huff's poor health when he sold him the policy. However, had United been required to investigate Mr. Huff's medical history before issuing the policy, it most likely would not have issued it, and this lawsuit probably would not have been filed. Undoubtedly, it would be in the interests of the insurer, the applicant, and judicial economy for the insurer to investigate the applicant's health history before issuing a policy. Apparently, though, until that is required, the sale of this type of life insurance policy with no serious attempt to determine the applicant's true health history will continue, to the frustration of "beneficiaries" of the deceased.
Nonetheless, after reviewing the record, we must conclude that the trial court properly entered the summary judgment for United and McClanahan. Mrs. Huff presented no substantial evidence that United or McClanahan made any misrepresentation to her regarding the insurance policy. As noted above, she stated that she did not learn that Mr. Huff had purchased the policy until after his death. Mrs. Huff's own testimony, quoted above, indicates that no representations were made to her about the United policy except those concerning the policy premiums, which are not at issue. Furthermore, she presented no substantial evidence that United and McClanahan fraudulently suppressed any material facts. The mere fact that Mrs. Huff was unaware that her husband had purchased life insurance, without more, would not support a finding of fraudulent suppression. We further note that United refused to pay the death benefit solely because of the falsity of Mr. Huff's statements about his health on the application. Those statements on the application concerning Mrs. Huff's health were not involved in United's decision to deny payment. Although *Page 24 
Mrs. Huff contends that her signature was forged on the application, she failed to show, even if the signature was forged, how she was proximately damaged by the fact that her name was signed on the application. Her name on the application was entirely unrelated to United's refusal to pay on Mr. Huff's policy.
Bare argument or conjecture does not satisfy the nonmoving party's burden to offer substantial evidence to defeat a properly supported summary judgment motion. Riggs v. Bell,564 So.2d 882, 884 (Ala. 1990). Mrs. Huff presented no substantial evidence to rebut United and McClanahan's prima facie showing that no genuine issue of material fact existed as to her fraud claims. Therefore, we must affirm the judgment of the trial court.
AFFIRMED.
MADDOX, ALMON, HOUSTON, and BUTTS, JJ., concur.
[1] Pursuant to Ala.R.App.P., Rule 43(a), Mrs. Huff's attorney has informed the Court that she has died during the pendency of this appeal.