682 So.2d 46 (1996)
John W. BUSH
v.
FORD LIFE INSURANCE COMPANY, et al.
1931402.
Supreme Court of Alabama.
July 19, 1996.
Jeffery C. Duffey, Montgomery, and Denise A. Simmons of Susan G. James and Associates, Montgomery, for Appellant.
*47 Gerald C. Swann, Jr. of Ball, Ball, Matthews & Novak, P.A., Montgomery, for Ford Life Ins. Co.
Steven F. Schmitt and John G. Smith of Schmitt & Harper, P.C., Tallassee, for Ben Atkinson Motors, Inc.
PER CURIAM.
This appeal, involving a dispute over a policy of credit life insurance, presents two questions:
1) When does a cause of action for negligent failure to procure insurance accrue?
2) Was the credit life insurer entitled to a summary judgment on the insured's bad-faith-failure-to-pay claim, on the basis that there was a debatable issue on the contract claim?
John W. Bush and his wife Alfa Sue Bush purchased a truck from Ben Atkinson Motors, a Ford Motor Company dealership, and financed it through Ford Motor Credit Corporation. The Bushes applied for credit life insurance through Ford Life Insurance Company (hereinafter "Ford Life"). Alfa Sue Bush died of a heart attack approximately one year after she and her husband had purchased the truck and had signed the credit life application.
Mr. Bush filed a claim with Ford Life, but Ford Life refused to honor it, on the ground that when they signed the application Mrs. Bush was not in good health, contrary to her representation on the application.
The credit life application includes a health statement, a portion of which reads as follows:
"I hereby declare that to the best of my knowledge, I am in good health. I authorize any physician or hospital to disclose to Ford Life any information concerning my medical history in the event of my death within one year from the effective date."
The plaintiff Mr. Bush admits that this statement was included on the credit life application; however, he testified that the only question the sales representative asked him and Mrs. Bush was "What do you consider your health to be?" and he says they replied that it was good. Ford Life conducted an investigation after Mrs. Bush's death and discovered that she had had a two-year history of heart problems.
Mr. Bush sued Ford Life Insurance Company, alleging breach of contract for its failure to pay on the policy and alleging the tort of bad faith failure to pay. He sued Ben Atkinson Motors in the same action, alleging negligent procurement of credit life insurance.
The trial court entered a summary judgment for Ben Atkinson on the negligent procurement claim, holding that that claim was barred by the statute of limitations. It also entered a summary judgment for Ford Life on the bad faith claim. Although this case involved other claims and other defendants, only these two claims are involved in this appeal.

I.
The statute of limitations applicable to a negligence claim is two years. Ala.Code 1975, § 6-2-38. Alfa Sue Bush died on September 18, 1990. Mr. Bush sued Ben Atkinson Motors on December 11, 1992, more than two years after her death. Mr. Bush argued that the cause of action for negligent procurement did not accrue and, therefore, that the statutory limitations period did not begin to run on that claim, until he received notice on December 14, 1990, from Ford Life that his claim would not be honored. We agree with Mr. Bush that the cause of action for negligent procurement did not accrue until Ford Life notified him that it would not honor his claim. In a case of negligent procurement, a cause of action accrues when a loss that would trigger liability under the policy occurs. Hickox v. Stover, 551 So.2d 259, 264 (Ala.1989). In Weninegar v. S.S. Steele & Co., 477 So.2d 949, 956 (Ala.1985), the Weninegars filed a negligence action against an insurance agent for allowing a flood insurance policy to lapse. The Court held that no legal injury occurred until the Weninegars' house was flooded and the insurer refused to cover the loss.
Here, the event that triggered liability under the policy was the death of Mrs. Bush, followed by Ford Life's December 14, 1990, *48 refusal to honor Mr. Bush's claim. Mr. Bush filed his negligent procurement claim against Ben Atkinson on December 11, 1992, within the two years allowed by the statute of limitations.

II.
As to the bad faith claim against Ford Life, Mr. Bush argues as follows:
"Ford Life, through the construction of its credit [life] policy, establishes for itself an automatic debatable reason for denying the bad faith claim by creating a fact issue on the breach of contract claim. It does this by submitting a subjective inquiry to the insured by requesting an opinion on their own health. This is unconscionable. Not only do they allow subjective assessment of a potential policyholder's health by the policyholder, they do not provide any qualifications, guidance, or questionnaires to assist in clarifying the term `good health.' This, along with the fail-safe provision that they may contact a physician or obtain medical records if the policyholder dies within one year of the effective date, clearly allows the company to go back and determine the health of the individual and then deny the claim. It should be noted here that the insurance company did not contact the physician. If they had they would have found his opinion was: `In my opinion she considered herself to be in good health.'
"The case at bar is ripe for consideration as one that is extraordinary, precluding the directed verdict test. After Ford Life was notified of the death of Mrs. Bush, it solicited the assistance of Conrad Thompson. Mr. Thompson took a statement from Mr. Bush. He then sought the medical records from Dr. Wool and St. Margaret's Hospital (Humana). The denial of the claim was decided by an employee of Ford Life based on the statement given to Thompson by Bush and the medical and hospital records. No medical expert was ever consulted for an opinion. Just as in the Thomas [v. Principal Financial Group, 566 So.2d 735 (Ala.1990),] case and others mentioned, the decision on the claim was not subjected to a proper cognitive evaluation and review. It cannot be supposed that one who, for the purpose of procuring insurance, alleges himself to be in good health shall be understood as warranting himself to be in perfect and absolute health, for this is seldom, if ever, the fortune of any human being, for we are all born with the seeds of mortality in us.
"In summation, a bad faith claim will always be likely in a case such as this when the insurance company, in constructing the policy, automatically creates a debatable reason on the breach of contract claim, therefore, denying the bad faith claim when using the directed verdict test. This case presents a situation where the exception to the directed verdict standard should be utilized, allowing the bad faith claim to be presented to the jury. Therefore, Ford Life Insurance Company should not have [received a summary judgment]."
The substance of Mr. Bush's argument is that Ford Life improperly created an "automatic debatable reason" and, because that reason was improperly created, he says, he should be able to maintain a bad faith claim. Although we understand Mr. Bush's argument, if we accepted it and determined that this was an "extraordinary" case, we believe that to do so would change the law of bad-faith-refusal-to-pay as established by this Court.
When this Court created the bad-faith tort in Chavers v. National Security Fire & Casualty Co., 405 So.2d 1, 7 (Ala.1981) it stated:
"[A]n actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either `(1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal.'"
Later, in National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179, 183 (Ala.1982), this Court held:
"No lawful basis `means that the insurer lacks a legitimate or arguable reason for failing to pay the claim.' Gulf Atlantic Life Ins. Co. v. Barnes, [405 So.2d 916 (Ala.1981)]. When a claim is `fairly debatable,' the insurer is entitled to debate it, *49 whether the debate concerns a matter of fact or law."
This Court has held that the plaintiff must go beyond a mere showing of nonpayment and prove bad faith nonpayment, a nonpayment without any reasonable ground for disputea failure to pay even though the insurer had no legal or factual defense to the claim. Bush v. Alabama Farm Bureau Mut. Casualty Ins. Co., 576 So.2d 175 (Ala.1991). We hold that Mr. Bush failed to meet his burden of proof as to the bad faith claim.
In National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357 (Ala.1982), this Court emphasized the heavy burden a plaintiff must bear in a bad faith case:
"In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury."
419 So.2d at 1362. Dutton also stated that "[w]hether an insurance company is justified in denying a claim under a policy must be judged by what was before it at the time the decision [was] made." Id. The Ford Life policy provided that Ford Life reserved the right to review the policyholder's medical records if he or she died within one year from the effective date of the policy.
Based on the foregoing, we reverse the summary judgment in favor of Ben Atkinson Motors on the negligent procurement claim, but we affirm the summary judgment in favor of Ford Life on the bad faith claim. The cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
AS TO PART I:
SHORES, HOUSTON, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX, J., dissent.
AS TO PART II:
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, and COOK, JJ., concur.
KENNEDY, INGRAM, and BUTTS, JJ., dissent.
HOOPER, Chief Justice (concurring in part; dissenting in part).
I concur with the majority opinion insofar as it affirms the summary judgment in favor of Ford Life Insurance Company on the bad faith claim. However, I must respectfully dissent from the reversal of the summary judgment in favor of Ben Atkinson Motors on the negligent procurement claim.
The plaintiff filed this action after the two-year statutory limitations period had run as to the negligent procurement claim. The majority calculates the statute of limitations period as running from the date Ford Life denied Mr. Bush's claim. In that way, Mr. Bush meets the statutory period by three days. I think the limitations period began to run on the date of Mrs. Bush's death; measuring the two-year period from that date, I conclude that Mr. Bush's action was barred.
In Hickox v. Stover, 551 So.2d 259, 264 (Ala.1989), this Court overruled prior cases holding that the statutory limitations period for negligent procurement actions begins to run on the date the insurer provides the unsatisfactory policy. Hickox held that negligent procurement claims accrue at the time of the loss, e.g., on the date of a flood that damages the house of an insured person. For claims involving life insurance, the time of loss is the date of death of the insured person. The cause of action in this case accrued at the time of the lossMrs. Bush's death.
The majority cites only two cases addressing negligent procurement. Hickox, supra, and Weninegar v. S.S. Steele & Co., 477 So.2d 949 (Ala.1985). This Court held in Weninegar that a cause of action for negligent procurement accrues when a loss triggering liability occurs. 477 So.2d at 956.
*50 Thus, under both Hickox and Weninegar, the cause of action for negligent procurement accrued when Mrs. Bush died. The majority states that this Court held in Weninegar "that no legal injury occurred until the Weninegars' house was flooded and the insurer refused to cover the loss." 682 So.2d at 47. (Emphasis original.) I think the following quote from Weninegar more accurately states its holding: "[T]he cause of action accrues when a loss triggering liability under the lapsed policy occurs.... We believe this to be the proper rule and overrule [Moore v. United States Pipe & Foundry Co., 384 So.2d 1108 (Ala.Civ.App.1980)], a case in which the Court of Civil Appeals used the date of policy lapse instead of the date of injury for determining the beginning of the limitations period, to the extent it conflicts with our holding in this case." 477 So.2d at 956. (Citations omitted.) The majority today de facto overrules Hickox and Weninegar, without stating that it is making new precedent. If this Court wants to create new precedent, it should do so clearly and explicitly. Clarity today would prevent future confusion as to the correct precedent to be followed in cases like this one.
Nevertheless, I dissent from the holding reversing the judgment for Ben Atkinson Motors and overruling this Court's precedent. I would affirm that judgment.
MADDOX, Justice (concurring in part; dissenting in part).
I agree that the summary judgment in favor of Ford Life Insurance Company on the bad faith claim is due to be affirmed. However, I must respectfully dissent from the reversal of the summary judgment for Ben Atkinson Motors, because I disagree with the majority's resolution of the statute of limitations issue.
Although I understand Mr. Bush's argument that the trial court incorrectly entered the summary judgment against his negligence procurement claim against Ben Atkinson on the ground that the statute of limitations had run, I cannot agree with Mr. Bush's claim that the cause of action did not accrue until he received notice from Ford Life that his claim would not be honored.
I believe, as the defendant Ben Atkinson claims, that the applicable two-year statute of limitations (Ala.Code 1975, § 6-2-38) barred the plaintiff's negligent procurement claim. Alfa Sue Bush died on September 18, 1990, and Mr. Bush did not file this action against Atkinson until December 11, 1992, more than two years later. The event that triggered liability in this case was the loss that gave rise to liability under the policythat was the death of Mrs. Bush; therefore, I believe the statute of limitations barred the claim.
I note that this Court in Hickox v. Stover, 551 So.2d 259, 264 (Ala.1989), held that a negligent procurement action does not accrue when the policy is delivered but when the loss that is insured against occurs. In the Hickox case, the insured's oil field equipment and inventory were destroyed by a lightning fire on June 12, 1984; this Court held that the statutory limitations period began to run on June 12, 1984, the date of the loss. In Weninegar v. S.S. Steele & Co., 477 So.2d 949, 956 (Ala.1985), this Court held that a negligence claim did not accrue when the policy lapsed, but when a loss that would trigger liability under the policy occurred. Based on the Hickox rule, I conclude that the event that triggered liability in this case was the death of Mrs. Bush on September 18, 1990. Mr. Bush filed his action on December 11, 1992. That was too late; the claim is barred by the statute of limitations.
INGRAM, Justice (concurring in part; dissenting in part).
I concur in the reversal of the summary judgment for Ben Atkinson Motors on the negligent procurement claim. However, I must respectfully dissent from the affirmance of the summary judgment for Ford Life on the bad faith claim.
As to the bad faith claim, Mr. Bush argues that Ford Life, through the construction of its credit life insurance policy, established for itself a "debatable reason" that would defeat a bad faith claim by creating a fact issue on the breach of contract claim. Mr. Bush contends that Ford Life does this by requiring the applicant to give a subjective opinion as to the state of her own health. Mr. Bush *51 also argues that Ford Life does not provide any qualifications, guidance, or questionnaires to assist the applicant in understanding the term "good health." Thus, Bush argues, Ford Life attempts to give itself a fail-safe provision whereby it may contact physicians and obtain medical records to make its own determination of "good health" if the insured dies within one year of its issuing the policy. Based on this delayed inquiry into the health of the insured, Ford Life may then deny the claim. Mr. Bush maintains that questions of fact exist as to whether Mrs. Bush was in "good health" when she completed the application.
The majority correctly sets out the history of the tort of bad faith. However, the Court noted in National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357 (Ala.1982), that the standard to be applied in "normal" or "ordinary" bad faith cases allows room for a different standard to be applied in certain unusual or extraordinary cases.
In Thomas v. Principal Financial Group, 566 So.2d 735, 743 (Ala.1990), the Court held that the factual circumstances of that case made it an extraordinary case in which it would not be appropriate to allow the insurer to obtain a judgment as a matter of law on the bad faith claim. In Thomas, Principal issued a life insurance policy to Barbara Thomas; it issued the policy through her employer, on a program insuring employees and their dependent children. Ms. Thomas's 21-year-old daughter attended cosmetology school in Mobile. The daughter became disabled and could not attend school because of ovarian cancer. She died of cancer at the age of 24. The policy provided for coverage of dependents only if they were less than 25 years of age and were attending school on a full-time basis. An agent for Principal denied the claim because the daughter was not attending school full time at the time of her death and therefore was not, Principal contended, a dependent eligible for coverage. The Court reversed a summary judgment for the insurer, holding that a fact question existed as to whether the daughter was a "dependent" under the policy at the time of her death and that this case was not the "normal" or "ordinary" case to which the "directed verdict on the contract claim" standard should be applied.
The facts of the case at hand clearly bring it within the "extraordinary circumstances" exception to the "directed verdict on the contract claim" standard. A fact question exists as to whether Mrs. Bush was in "good health" when she signed the good health statement. Once again, this is not the "normal" or "ordinary" case to which the "directed verdict on the contract claim" standard should be applied.
The purely subjective good health statement, as in so many other credit life policies, reads "to the best of my knowledge, I am in good health." A fact question exists as to whether Mrs. Bush, "to the best of [her] knowledge," was in good health at the time she signed the statement.
The record reveals that Mr. Bush testified that he and Mrs. Bush were asked by the sales representative only "What do you consider your health to be?" He stated in his deposition as follows:
"Q. Let me ask you this, Mr. Bush. Did you and Sue discuss with Mr. Lockhart or did he ask you any questions about the condition of your health?
"A. He asked me what I considered my health was, I believe. I'm not sure.
"Q. Okay.
"A. I mean, how do I consider my health.
"Q. All right. Your best recollection, he said, you know, `What do you consider your health to be?'
"A. Right. That's the same if I ask you [sic].
"Q. And the same question was posed to Sue?
"A. Right. And both of us signed it.
"Q. And both of you said, `We are in good health'?
"A. Right."
Mrs. Bush died approximately five months after the credit life policy was issued. In accordance with the policy, Ford Life obtained copies of Mrs. Bush's medical records and took a statement from Mr. Bush. Even though the evidence revealed that Mrs. Bush had had a two-year history of heart problems and had been briefly hospitalized on four *52 occasions, the affidavit of her cardiologist, Dr. Thomas Wool, supported her "good health" claim. His affidavit stated:
"Alfa Sue Bush was a patient of mine. Mrs. Bush was suffering from angina. She had been previously placed on medication to regulate her condition. The medications were prescribed to alleviate the spasms and angina in order for her to lead a normal and active life. Her condition was stable, and she was doing well; so well, in fact, that on her last visit to me on May 31, 1990, she considered completely stopping her medications. In my opinion she considered herself in good health."
(Emphasis added.)
I disagree with the majority and would hold that this case is not the "normal" or "ordinary" case to which the "directed verdict on the contract claim" standard should be applied. It would not be appropriate to allow Ford Life to obtain a judgment as a matter of law on the bad faith claim merely by the subjective wording of its policy, in which it creates a fact issue on the breach of contract claim. In other words, because a fact issue exists as to whether Mrs. Bush was in "good health" at the time she signed the good health statement, Ford Life may not avoid a bad faith claim based upon such a limited inquiry into the state of Mrs. Bush's health at the time she signed the statement. Therefore, I would reverse the summary judgment on the bad faith claim in favor of Ford Life.
This Court has noted the problems connected with the failure of an insurance company to investigate an applicant's health history at the time the application is made; see Miller v. Dobbs Mobile Bay, Inc., 661 So.2d 203 (Ala.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 177, 133 L.Ed.2d 117 (1995); and Huff v. United Ins. Co. of America, 674 So.2d 21 (Ala.1995).
We stated in Miller v. Dobbs Mobile Bay, Inc., supra, quoting the Arkansas Supreme Court:
"`Obviously the agent is encouraged to sell insurance, which is Ford Life's business, and paid a handsome commission. Everyone is satisfied until the death of the insured when it may be learned that he was not "in good health."
"`Such a situation puts an unrealistic burden on an insured which can only result in a decided advantage enuring to the benefit of the company.'"
661 So.2d at 206, quoting Ford Life Ins. Co. v. Jones, 262 Ark. 881, 886, 563 S.W.2d 399, 402 (1978).
We further stated in Miller v. Dobbs Mobile Bay, Inc., quoting the Mississippi Supreme Court,
"`Where an insurance company makes no effort to establish clear and meaningful guidelines to assist its agents in discerning persons eligible for coverage, but merely relies on the agents' judgment to select those persons appearing to be healthy, that company by its actions manifests an intention to "insure the world."'"
661 So.2d at 207, quoting Southern United Life Ins. Co. v. Caves, 481 So.2d 764, 768 (Miss.1985).
I believe that the facts of this case demonstrate, once again, the need for a good faith investigation into an applicant's health before a company issues a policy, if the insurance company is to avoid subjecting itself to litigation over allegations of bad faith.
I would reverse Ford Life's summary judgment on the bad faith claim.
KENNEDY and BUTTS, JJ., concur.