Eric T. Campbell appeals from a summary judgment in favor of his former employer, Naman's Catering, Inc., on Campbell's claims of breach of contract, fraud, and conversion. We affirm in part, reverse in part, and remand.
 I. Standard of Review
We review de novo a trial court's summary judgment; therefore, we examine the evidence in the same manner as the trial court:
 "When reviewing a ruling on a motion for a summary judgment, this Court *Page 657 
applies the same standard that the trial court used `in determining whether the evidence before the court made out a genuine issue of material fact.' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988). When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a ruling on a motion for a summary judgment, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Renfro v. Georgia Power Co., 604 So.2d 408, 411 (Ala. 1992)."
City of Orange Beach v. Duggan, 788 So.2d 146, 149 (Ala. 2000).
 II. Facts
Viewed in the light most favorable to Campbell, the nonmoving party, the facts of the case are as follows. Campbell was employed by Naman's from January 1999 to October 2000. During his employment, Campbell elected to have Naman's withhold approximately $65 per month from his earnings to pay the premiums for life and disability insurance. His insurance coverage began in March 1999, but lapsed in February 2000, because, without Campbell's knowledge, Naman's had ceased paying the premiums in October 1999. Although Naman's discontinued paying the premiums, it continued to withhold $65 per month from Campbell's pay through May 2000.
In June 2000, Campbell discovered that Naman's had ceased paying the premiums on his insurance. On October 25, 2000, after Campbell had retained an attorney, Naman's reimbursed Campbell $518.06, which represented the premium payments it had withheld from his earnings but had not paid to the insurer plus interest at the rate of 10%.
In addition to the premium payments, Campbell had elected in January 2000 to have Naman's withhold $50 per week from his earnings to be deposited into a Christmas Club savings account. While Naman's initially made several deposits into the account, no deposits were made to the account from the end of March 2000 to the end of October 2000. Campbell admits that, before he filed his complaint, Naman's had reimbursed Campbell all of the money it had withheld for his Christmas Club account; however, that reimbursement included no amount representing interest.[1] *Page 658 
 III. Analysis A. Breach-of-Contract Claim
In order for Campbell's breach-of-contract claim to survive Naman's summary-judgment motion, Campbell must produce substantial evidence of "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." Southern Med. Health Sys., Inc. v.Vaughn, 669 So.2d 98, 99 (Ala. 1995). The arguments of the parties focus solely on the issue of damages.
As to the insurance premium payments, it is undisputed that all of the money withheld by Naman's was returned to Campbell (plus interest at the rate of 10%), and that, while he did not have coverage for a time, Campbell filed no insurance claim during that time that could have been paid under the policies. Because Campbell has provided no evidence of damages stemming from the failure to pay the insurance premiums, summary judgment was proper.
Campbell's harm with respect to his Christmas Club account appears to be only that he was not paid interest on the amounts that were withheld from his pay but that were not deposited to the account. Naman's responds that the fact that Campbell was not paid interest is not substantial evidence of damages because, it argues, Campbell has not produced evidence as to the appropriate amount of interest. However, it is undisputed that "simple interest" in some amount was to accrue on the Christmas Club account. Therefore, we hold that Campbell has produced substantial evidence of damages — namely, the interest that he lost when the money withheld from his paycheck was not deposited into Campbell's Christmas Club account — sufficient to survive Naman's summary-judgment motion.
 B. Fraud Claim
While Campbell frames his fraud claim in terms of fraudulent misrepresentation, his assertions — that Naman's promised to use the withheld moneys to pay premiums on his insurance and to fund his Christmas Club account — more accurately allege promissory fraud. A plaintiff asserting a claim of promissory fraud must prove two elements generally not required in a usual claim of fraud:
 "The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. To prevail on a promissory fraud claim such as that at issue here, that is, one based upon a promise to act or not to act in the future, two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive. See Russellville Production Credit Ass'n v. Frost, 484 So.2d [1084,] 1085-87 [(Ala. 1986)]. Furthermore, '[t]he failure to perform a promised act is not in itself evidence of intent to deceive at the time a promise is made. If it were, the mere breach of a contract would be tantamount to fraud.' Id. at 1086 (citation omitted)."
Padgett v. Hughes, 535 So.2d 140, 142 (Ala. 1988).
Campbell's affidavit testimony that Naman's failed to pay the insurance *Page 659 
premiums and to fund the Christmas Club account would not alone be substantial evidence indicating that Naman's intended to deceive or not to perform those acts. However, Campbell also submitted affidavits of several other employees of Naman's; those affidavits can be read as indicating that Naman's had made it a practice to promise its employees that it would withhold money from the employees' paychecks and use the withheld moneys to pay insurance premiums and to fund Christmas Club accounts but would then, at some point, cease releasing the withheld moneys for those purposes.[2] We hold that these affidavits constitute substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence," West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989), of the intent necessary for Campbell's promissory-fraud claim to survive a summary-judgment motion.
 C. Conversion Claim
Campbell correctly argues that the fact that Naman's refunded to him the money it originally withheld does not negate an action for conversion. See Gunite Contracting Co. v. Mize, 341 So.2d 694, 695 (Ala. 1977) (stating that "the law in Alabama is that, if evidence is presented to the jury which shows that a party has converted property in known violation of the owner's rights and in violation of the law, punitive damages may be assessed"). However, Naman's correctly argues that Campbell has not produced substantial evidence indicating that the money Campbell claims he is entitled to is "specific money capable of identification," as required when one asserts a claim of conversion of money:
 "Generally, an action will not lie for the conversion of money. However, if the money at issue is capable of identification, then a claim of conversion may be appropriate. In Lewis v. Fowler, 479 So.2d 725, 726
(Ala. 1985), this Court discussed at length the circumstances under which an action for conversion will lie to recover a sum of money:
 "`"`[T]rover lies for the conversion of "earmarked" money or specific money capable of identification, e.g., money in a bag or coins or notes which have been entrusted to defendants' care.'" Hunnicutt v. Higginbotham, 138 Ala. 472, at 475, 35 So. 469, at 470 (1903) (quoting from 21 Enc.Pl. Prac., 1020, 1021). See also Moody v. Keener, 7 Port. 218 (Ala. 1838), and Humana of Alabama, Inc. v. Rice, 380 So.2d 862 (Ala.Civ.App. 1979), cert. denied, 380 So.2d 864 (Ala. 1980).
 "`Money in any form is generally regarded and treated as property, and it is well settled that an action will lie for the conversion thereof, where there is an obligation to keep intact and deliver the specific money in question, and where such money can be identified. Moody v. Keener, supra (money sealed up in a particular letter); Hunnicutt v. Higginbotham, supra
($180 in $20 gold pieces and $102 in paper money which was "wrapped up to itself" and placed in a safe). In England, it was first held that money could not be converted so as to support an action in trover unless it was in a "bag or chest." Holliday v. Hicks, 78 Eng.Rep. 878, 900 (1599).
 "`The requirement that there be "earmarked money or specific money capable of identification" before there can be a conversion has been *Page 660 
complicated as a result of the evolution of our economic system.
 "`Now, in conversion cases, the courts are not confronted so much with a particular piece of money, i.e., a coin or a bill, but with identified or segregated sources from which money has come or types of accounts into which money has been deposited.
 "`Money paid by an insurance company to a hospital which had been assigned to the hospital by the plaintiff has been determined as a matter of law not to be specific property which would support an action of conversion. Humana of Alabama, Inc. v. Rice, supra. Shares in a "Ready Assets Trust Account" which must be redeemed for cash and on which checks can be written have been held to be sufficiently identifiable to support an action in conversion. Limbaugh v. Merrill Lynch, Pierce, Fenner Smith, Inc., 732 F.2d 859 (11th Cir. 1984) (citing Alabama law).
 "`Section 7 of the Annotation, "Nature of property or rights other than tangible chattels which may be subject of conversion," 44 A.L.R.2d 927 (1955), lists numerous cases in which attempts have been made to recover for the conversion of money.
 "`In this case, the Court is being asked to determine whether money which was withheld from wages of an employee by an employer in response to a garnishment filed against the employer by a creditor of the employee is specific property which will support an action in conversion. Clearly, there is no identifiable coin or bill, and nothing that has been sealed up in a particular letter, "wrapped up to itself," or placed in a bag or chest. There is no evidence that this money was placed in a special account. It is merely money which was not paid to an employee or to the creditor of an employee, but was withheld from an employee's wages in response to a garnishment.'"
Greene County Bd. of Educ. v. Bailey, 586 So.2d 893, 898-99 (Ala. 1991).
Here, as in Bailey, there is no substantial evidence indicating that the money forming the basis for Campbell's conversion claim was held in any sort of special account; instead, it was "merely money which was not paid to an employee . . . but was withheld from an employee's wages . . . ." We hold that the trial court did not err in entering a summary judgment in favor of Naman's with respect to Campbell's conversion claim.
 IV. Conclusion
Based on the above, we affirm the trial court's summary judgment in favor of Naman's with respect to 1) Campbell's breach-of-contract claim insofar as it is based on the failure to pay insurance premiums, and 2) Campbell's conversion claim. We reverse the summary judgment and remand the case with respect to 1) Campbell's breach-of-contract claim insofar as it is based upon Naman's failure to include interest on the Christmas Club account in the amount it refunded to Campbell, and 2) Campbell's promissory-fraud claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MOORE, C.J., and LYONS, JOHNSTONE, and WOODALL, JJ., concur.
[1] Campbell also alleges that when he was hired Naman's promised to pay him a bonus of $500 per month for each month during which Campbell worked 80 or more hours in a week. However, we do not address this claim because it was never properly raised before the trial court, a defect that was addressed in the trial court's summary-judgment order:
 "This Court finds that [Campbell] failed to articulate a claim for the $500.00 a month bonus allegedly promised to [Campbell] by [Naman's], which [Campbell] argues in his Opposition to [Naman's] Motion for Summary Judgment. This Court notes that such a claim is conspicuously absent from [Campbell's] Complaint, [Campbell] failed to file a Motion for Leave to File an Amended Complaint and failed to file an Amended Complaint setting forth such a claim. See Martin v. [Fidelity Casualty Co. of New York], 421 So.2d 109
(Ala. 1982) (holding that the plaintiff failed to state claims for trespass and negligence, the Court stated that `it is for the plaintiff and not the court to articulate the claims forming [a] basis for relief. . .')."
[2] Naman's does not address those affidavits in its brief to this Court. *Page 661