SHAW, Justice.
The plaintiffs below, Jimmy Larry Beddingfield ("Larry"), his wife, Rebecca M. Beddingfield ("Rebecca"), and their adult son, James Cody Beddingfield ("Cody") (hereinafter referred to collectively as "the Beddingfields"), appeal from a summary judgment in favor of the defendants below, Mullins Insurance Company, Mullins & Company Insurance, Rand Mullins, and David Mullins (hereinafter referred to collectively as "Mullins"), on the Beddingfields' claims stemming from Mullins's alleged failure to properly procure insurance coverage. We affirm the trial court's judgment in part, reverse it in part, and remand.
Facts and Procedural History
Mullins Insurance Company and Mullins & Company Insurance are "licensed insurance brokerage[s] or agenc[ies]" operating in Huntsville; Rand Mullins and David Mullins are licensed insurance or brokerage agents employed by those entities. In 1997, Larry and Rebecca purchased a $300,000 homeowners' liability-insurance *700 policy from Rand Mullins that protected Larry and Rebecca's primary residence. In 2001, Larry and Rebecca purchased a second liability-insurance policy in the amount of $100,000 that provided coverage for a rental house located in Florence; they later constructed another house in Guntersville and, in 2003, purchased an additional $100,000 liability-insurance policy from Rand Mullins for that property. All three policies Rand Mullins procured for Larry and Rebecca were initially obtained from Vesta Insurance Corporation; they were later replaced by policies issued by The Shelby Insurance Company ("SIC").
In July 2003, Mullins canceled the insurance policy on the Florence house allegedly based on a belief that "the policy was issued in duplicate." Allegedly unbeknownst to Larry and Rebecca, however, the requested cancellation left the Florence house uninsured. One month later, pursuant to a mortgage refinance on the Beddingfields' residence, Larry and Rebecca paid $1,629 to Mullins, representing one year's insurance premium on that residence; the check was endorsed and deposited into Mullins's account. In March 2004, the policy on the Beddingfields' residence was canceled because of nonpayment of the premium; neither Larry nor Rebecca, however, was able to recall receiving notice of the cancellation. After those two events, Larry and Rebecca were without insurance on their residence and the Florence house, leaving them with liability insurance only on their Guntersville house in the amount of $100,000.
In July 2004, a minor guest at the Beddingfields' Guntersville house, Trace Rex Linam, suffered a serious eye injury in a fireworks-related incident. In 2008, Linam and his father, Charles Gary Linam, sued the Beddingfields, alleging that they, and particularly Cody, who was a minor at the time, were responsible for the injury (this action is hereinafter referred to as "the Linam litigation"). Because SIC had been placed into receivership in Texas in 2006, the Alabama Insurance Guaranty Association ("AIGA") covered the Beddingfields' legal-defense costs in the Linam litigation; however, the maximum amount of liability coverage available was limited to $100,000-the amount of the liability-insurance policy Larry and Rebecca had obtained from Mullins to insure that property-and not $500,000, the amount they say would have been available had the other two policies not been canceled. See § 27-42-8(a)(1), Ala. Code 1975 (obligating AIGA to cover "claims existing prior to the determination of [an insurer's] insolvency and arising within 30 days after the determination of insolvency, or before the policy expiration date if less than 30 days after the determination" but limiting AIGA's obligation to the amount of "the obligation of the insolvent insurer under the policy from which the claim arises"). In February 2011, a judgment was entered on a $600,000 jury verdict against the Beddingfields in the Linam litigation. The Beddingfields appealed that decision to this Court. Because, however, AIGA did not post the requisite supersedeas bond-allegedly because SIC was in receivership-and the Beddingfields were allegedly unable to obtain a bond, execution of the judgment was not stayed during the pendency of the appeal.
In July 2011, while their appeal was pending, the Beddingfields sued Mullins in the Madison Circuit Court. The complaint alleged numerous counts of negligence and wantonness with relation to Mullins's handling of the various insurance policies. Specifically, Counts I and II, which related to the Florence house, alleged that Mullins had negligently and/or wantonly "failed to reasonably review coverages provided by" the insurance policy on that property. More specifically, it alleged:
*701 "[Mullins] negligently cancelled the insurance policy which provided liability insurance coverage in the amount of $100,000.00, and instead continued in force and effect an insurance policy providing no liability insurance coverage.
"... Had said coverage been in force and effect it would have provided additional insurance monies for settlement on behalf of the Beddingfields, or payment of a judgment against the Beddingfields [in the Linam litigation]."
Counts III and IV of the complaint, which related to the Beddingfields' residence, alleged that Mullins had negligently and/or wantonly failed to pay the premium for the homeowners' insurance coverage despite having received the premium and that, as a result, the policy had been canceled, resulting in alleged mental anguish and property loss. Counts V and VI related to Mullins's decision to procure the Beddingfields' coverage from SIC and alleged that Mullins had negligently and/or wantonly failed to warn the Beddingfields of SIC's precarious financial situation, its poor risk rating, and the potential consequences of obtaining insurance from such an insurance company. Counts VII and VIII alleged that Mullins had negligently and/or wantonly "appropriated the insurance premiums provided by the Beddingfields for their residence," resulting in the lapse of the Beddingfields' homeowners' policy and a corresponding reduction in available liability-insurance coverage. Finally, Counts IX and X of the complaint alleged that Mullins had negligently and/or wantonly "failed to advise the Beddingfields of their need to obtain personal umbrella liability insurance coverage to protect their substantial assets from potential risks of loss." The Beddingfields sought unspecified damages in connection with each of the above-described claims. Mullins filed an initial answer generally denying liability and asserting numerous affirmative defenses to the Beddingfields' claims.
In 2013, this Court issued its decision in the appeal in the Linam litigation. See Beddingfield v. Linam, 127 So.3d 1178 (Ala. 2013). Specifically, this Court reversed the trial court's judgment and, as to the Linams' claims of negligent entrustment, negligent supervision, and wanton supervision, rendered a judgment in favor of Larry and Rebecca. 127 So.3d at 1191. Thus the claims against Larry and Rebecca in the Linam litigation were concluded in their favor. The Court also rendered judgment in favor of Cody on the Linams' strict-liability claim, but remanded the matter for a new trial on their negligence, wantonness, and assault claims against him. Id. Following that remand, the remaining claims were apparently settled and the action was ultimately dismissed.
In 2016, Mullins filed a motion for a summary judgment. Mullins attached to its motion, among other things, a notice dated March 4, 2004, which reflected the cancellation of the liability policy on the Beddingfields' residence effective March 19, 2004, and which was allegedly mailed to Larry and Rebecca at the address of their residence. Also attached was a follow-up "confirmation of cancellation," which was allegedly mailed to Larry and Rebecca on March 31, 2004.
In its motion, Mullins argued that it was entitled to a summary judgment on all of the Beddingfields' claims, both because the claims were allegedly filed after the expiration of the applicable two-year limitations period[1] and because the Beddingfields had allegedly "sustained no damages." More specifically, Mullins alleged:
*702 "1. The Beddingfields knew as early as at least 2008, that there were potential coverage gaps in their insurance because the AIGA, and not [SIC], provided the[ir] defense. ...
"2. Following an appeal by the Beddingfields ... [in the Linam litigation], the Alabama Supreme Court on March 8, 2013 reversed and rendered the verdict as to [Larry and Rebecca] and remanded the claims against Cody back to the trial court for a retrial.
"3. In April 2016, all of [the] remaining claims against Cody [in the Linam litigation] were settled and there is no longer any threat of any Judgement against [any of the Beddingfields].
"4. ...[T]he Beddingfields ... have [not] had to pay or will have to pay any of their own personal money for defense or settlement costs of the [ Linam litigation]...."
According to Mullins's summary-judgment motion, under Alabama law, all claims arising from the alleged failure to procure insurance coverage accrue when a loss triggering coverage occurs and the insurer refuses to cover the loss. Thus, Mullins argued, the Beddingfields' claims against Mullins accrued at the very latest at the time of-but arguably well before-the filing of the Linam litigation in May 2008 when the Beddingfields learned that AIGA, not SIC, was providing a defense; therefore, according to Mullins, the statute of limitations for the Beddingfields' current action expired in May 2010, before their initiation of the action in July 2011. Mullins further argued that the Beddingfields, in their respective depositions, admitted that their damages would be only those resulting from liability in the Linam litigation. Because, Mullins alleges, the Linam litigation settled without the Beddingfields actually having incurred any related out-of-pocket expenses, Mullins contended that they were not in fact damaged.
The Beddingfields moved to strike the cancellation notices attached as exhibits to Mullins's summary-judgment motion, which request the trial court granted. In further opposition to Mullins's motion, the Beddingfields attempted to demonstrate the existence of a question of material fact precluding summary judgment. Specifically, relying on certain exhibits, including affidavit and deposition testimony from the Beddingfields and their counsel in the Linam litigation, they argued that there remained a question as to when their causes of action accrued. Contrary to Mullins's assertions, they contended that their negligent-procurement claims did not accrue until a claim for insurance benefits was denied-an event they asserted never actually occurred in this case. The Beddingfields subsequently filed an additional response disputing that knowledge of SIC's receivership alerted them to Mullins's alleged breach of duty and arguing that their first legal injury instead occurred either when the plaintiffs in the Linam litigation initially refused a policy-limits settlement offer in October 2009 or when the jury, in February 2011, returned its verdict, which exceeded available policy limits.
The Beddingfields also contended that, under Alabama law, a tort-based cause of action accrues only when actual damage is sustained. They argued alternatively that they suffered legal injury either when the Linams refused to settle for the limits of the policy or when the jury returned its verdict. Thus, according to the Beddingfields, their July 11, 2011, filing was clearly within the two-year statute of limitations.
In their motion and accompanying exhibits, the Beddingfields conceded a complete "lack of damage[ ] prior to the verdict rendered against them in the Linam *703 suit." They explained, however, that, during their appeal of the resulting judgment and based on the absence of a supersedeas bond, the Linams undertook efforts to seize their personal assets, which required them to hire outside legal counsel and to incur approximately $15,000 in legal fees and expenses. The Beddingfields further testified that, as a result of the garnishment efforts and the related damage to his credit, Larry was unable to pay for liability insurance and other expenses necessary to maintain his general contractor's license. Affidavit testimony from an economist retained by the Beddingfields estimated Larry's lost business income at $795,223.71.
Subsequent to a hearing, the trial court, without indicating the findings on which its ruling was based, entered an order granting Mullins's summary-judgment motion. The Beddingfields appealed.[2]
Standard of Review
" ' "This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989) ; Ala. Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala. 1989)." '
" Prince v. Poole, 935 So.2d 431, 442 (Ala. 2006) (quoting Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala. 2004) )."
Brown v. W.P. Media, Inc., 17 So.3d 1167, 1169 (Ala. 2009).
Discussion
The Beddingfields contend that the trial court erred in entering a summary judgment for Mullins. More specifically, they argue, as they did below in response to Mullins's statute-of-limitations argument, that the earliest their negligence and wantonness claims against Mullins could have accrued was October 2009 when the Linams refused the policy-limits settlement offer extended to them following the initiation of the Linam litigation[3] and that *704 they timely filed their action within two years of that date. Additionally, they maintain that they presented sufficient evidence of their resulting damage so as to defeat summary judgment on this alternate ground.
I. Damage
"Damages are an essential element of the [Beddingfields'] tort [claims]" and, thus, "[p]roof of damage [is] an essential part of [their] case." Davis v. Hanson Aggregates Southeast, Inc., 952 So.2d 330, 335 (Ala. 2006) (internal quotation marks omitted). Other courts have suggested that the mere failure to properly procure requested insurance coverage is not actionable in every instance:
"So it is that a negligence action may be maintained against an insurance agent or broker who undertakes to procure an insurance policy and fails to do so, ... but not unless there has been some appreciable harm to the potential insured. ... The failure to obtain insurance obviously will not cause injury in every case. If no accident produces a claim, the failure will have been negligence in the abstract. ... Some courts have said that legal injury has not occurred until the insured actually suffers the unprotected loss. ... In those actions in negligence, the requirement that the plaintiff sustain appreciable harm was met when the plaintiff incurred expenses, most often associated with employing a new lawyer to prosecute or defend against an action which would not have occurred but for the defendant-attorney's negligence. ... It might be supposed that [the] consciousness of contingent liability was damage enough, but the authorities are chary of treating the threat of future harm without realization of some tangible harm, like out-of-pocket payments, as the basis for concluding that damage has occurred and the cause of action has accrued. ..."
International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 29 Mass. App. Ct. 215, 218-19, 560 N.E.2d 122, 124-25 (1990) (footnote omitted). Similarly, in Campbell v. Naman's Catering, Inc., 842 So.2d 654 (Ala. 2002), this Court affirmed a summary judgment for an employer where, although the insured did not have coverage for a time as the result of the employer's failure to remit premiums for life and disability insurance to the insurer, no claim resulted during that time; thus, the insured "provided no evidence of damages stemming from the failure to pay the insurance premiums." 842 So.2d at 658.
Here, the Beddingfields presented substantial evidence to support their allegations of damage resulting from Mullins's purported negligent procurement of insurance in the form of, among other things, attorneys' fees and business losses attributable to the Linam litigation and Mullins's alleged failures identified in their complaint. Thus, Mullins's argument below that the Beddingfields were not damaged was not a meritorious basis for the entry of a summary judgment.
II. Statute of Limitations
The Beddingfields argue that the summary judgment was inappropriate if it was based on Mullins's argument that their claims were time-barred. The parties appear to be in agreement that, as to the Beddingfields' negligence claims, a two-year statute of limitation applies. See note 1, supra. The only issue remaining is the accrual date of the Beddingfields' claims, at which point the limitations period began to run.[4]
The Court has previously explained:
*705 " Weninegar[ v. S.S. Steele & Co., 477 So.2d 949 (Ala. 1985),] involved a negligence claim against an insurance agent for allowing a flood insurance policy to lapse. We held that no legal injury occurred until the plaintiffs' house was flooded and the insurer refused to cover the loss, and we cited cases from four other jurisdictions in support of this rule. Weninegar, 477 So.2d at 956 (citing Austin v. Fulton Ins. Co., 444 P.2d 536 (Alaska 1968) ; Wolfswinkel v. Gesink, 180 N.W.2d 452 (Iowa 1970) ; Spurlin v. Paul Brown Agency, Inc., 80 N.M. 306, 454 P.2d 963 (1969) ; and Kunz v. Buckeye Union Ins. Co., 1 Ohio St. 3d 79, 437 N.E.2d 1194 (1982) ).
"We find no compelling reason to apply Weninegar in cases of negligent lapse and not in cases of negligent procurement as well. The four cases cited in Weninegar for the rule that the action accrues when the loss occurs, Austin, Wolfswinkel, Spurlin, and Kunz, each involved a claim for negligent procurement, not negligent lapse. ... We hold that [a negligent-procurement] action accrues when the loss occurs."
Hickox v. Stover, 551 So.2d 259, 264 (Ala. 1989), overruled on other grounds by Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala. 1997) (emphasis added). Further, in Bush v. Ford Life Insurance Co., 682 So.2d 46, 47 (Ala. 1996), this Court held, citing Weninegar v. S.S. Steele & Co., 477 So.2d 949 (Ala. 1985), that a cause of action based on negligent procurement accrues "when a loss that would trigger liability under the policy occurs" and the insurer notifies the insured that it will not honor the claim. Citing Bush, the Beddingfields contend that SIC's receivership status did not constitute a denial of their insurance claim and that they were never denied insurance coverage.
In this case, the incident underlying the Linam litigation occurred on July 2, 2004.[5] Before that, in 2003, the policy on the Florence rental house had been allegedly erroneously canceled by Mullins, and the policy on their residence was canceled in 2004 as the result of Mullins's alleged misappropriation or misapplication of the submitted premium. Trace Linam did not actually sue the Beddingfields until May 23, 2008.[6] At the time the Linam litigation was initiated, the Beddingfields were provided a defense; however, that defense was only to the limits of the $100,000 policy covering the Guntersville house, and the Beddingfields were actually denied access to the additional policy coverages of $400,000 that, but for Mullins's tortious conduct, would otherwise have been available to them. The notice of the unavailability of those additional proceeds constituted, for all intents and purposes, a denial of the Beddingfields' claims for benefits under those policies, i.e., the policy proceeds were never extended to them for their use. Cf. Congress Life Ins. Co. v. Barstow, 799 So.2d 931, 938 (Ala. 2001) ("An insurance company's denial of a claim may be either 'express' ('actual') or 'constructive.' ... 'In Alabama, a plaintiff can establish a constructive denial in two ways: "(1) by showing that the passage of time is so great *706 that the delay alone creates a denial; or (2) by showing sufficient delay in payment coupled with some wrongful intent by the insurance company." ' " (quoting State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 317 n. 6 (Ala. 1999) ) ). Although Larry was unable to specify the exact date, he did concede that "shortly after" the Beddingfields were sued in the Linam litigation, he "learn[ed] that [they did not] have the five hundred thousand dollars of insurance [they] thought [they] had" and that they were "short essentially four hundred thousand dollars in coverage." Although it is true that the Beddingfields still had insurance during the litigation and that their insurance coverage was never denied, they did not have the insurance they claimed that they should have had if not for Mullins's allegedly tortious conduct. Here, the Beddingfields filed their negligent-procurement action on July 17, 2011-more than three years after the Linam litigation was instituted against them and they learned about their shortfall in coverage. Their negligence claims are thus untimely under the two-year statute of limitations. The trial court, applying the foregoing accrual principles, correctly entered a summary judgment in favor of Mullins on the Beddingfields' negligence claims; that portion of the trial court's judgment is, therefore, due to be affirmed.
A different analysis, however, is required as to the Beddingfields' wantonness claims. They contend that, applying this Court's decision in Ex parte Capstone Building Corp., 96 So.3d 77 (Ala. 2012), because their wantonness claims accrued before June 3, 2011, their claims were timely as long as they were filed before June 2013. We agree.
In Ex parte Tate & Lyle Sucralose, Inc., 81 So.3d 1217 (Ala. 2011), applying the rule of Ex parte Capstone, supra, the Court explained:
"This Court has applied to wantonness claims both the two-year limitations period provided in Ala. Code 1975, § 6-2-38(l ), see, e.g., Boyce v. Cassese, 941 So.2d 932, 945 (Ala. 2006), and the six-year period provided in Ala. Code 1975, § 6-2-34(1), see McKenzie v. Killian, 887 So.2d 861 (Ala. 2004). To resolve this discrepancy, this Court, in Ex parte Capstone Bldg. Corp., [Ms. 1090966, June 3, 2011] (Ala. 2011), overruled McKenzie to the extent it held that the six-year statute of limitations found in § 6-2-34(1) applied to a claim of wantonness and 'reaffirm[ed] the proposition that wantonness claims are governed by the two-year statute of limitations now embodied in § 6-2-38(l ).' We specified in Capstone, however, that 'litigants whose causes of action have accrued on or before the date of this decision [i.e., June 3, 2011] shall have two years from today's date to bring their action unless and to the extent that the time for filing their action under the six-year limitations period announced in McKenzie would expire sooner.' "
81 So.3d at 1222-23 (emphasis added; note from reporter of decisions omitted). See also Ex parte Novus Utils., Inc., 85 So.3d 988, 995 n.1 (Ala. 2011).
Here, as set out above, the Beddingfields' claims accrued at the time the Linam litigation was initiated in May 2008 and the Beddingfields were denied the entirety of the insurance benefits they had engaged Mullins to procure. Under Ex parte Capstone, because their claims accrued before June 3, 2011, the Beddingfields are correct that they had until June 3, 2013, to file suit, unless the six-year statute of limitations previously applied under Alabama law had expired earlier, which it did not in this case. The Beddingfields' wantonness claims were filed in July 2011, well within the two-year period prescribed *707 in Ex parte Capstone. Because the wantonness claims were commenced against Mullins within the two-year savings period that must be applied under Ex parte Capstone, the wantonness claims are not time-barred.
Based on the foregoing, we affirm the summary judgment as to the negligence claims, reverse the summary judgment as to the wantonness claims, and remand the case.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Stuart, C.J., and Bolin, Wise, and Sellers, JJ., concur.

See § 6-2-38(l ), Ala. Code 1975.

Following the filing of the notice of appeal, Mullins's counsel filed a motion requesting leave from this Court to withdraw from representation; according to that motion, the insurance company that had issued the policy under which Mullins's counsel had been retained rescinded the policy and withdrew both its defense and indemnification. This Court granted permission for the requested withdrawal and issued an order directing Mullins to indicate whether it intended to obtain replacement counsel or to proceed pro se. Mullins's response explained that, because of a lack of financial resources, it was unable to obtain counsel; Mullins, therefore, did not file a brief on appeal.

As explained elsewhere, the Beddingfields also argue that their claims did not accrue until February 2011, when a judgment was entered in the Linam litigation.

To the extent that the Beddingfields purport to rely on Jones v. Alfa Mutual Insurance Co., 1 So.3d 23 (Ala. 2008), as support for their argument that disputed facts surrounding the date of accrual of a cause of action for statute-of-limitations purposes presents a jury question, Jones involved a bad-faith, rather than a negligent-procurement, claim and is therefore inapposite. See 1 So.3d at 29-30.

According to the Beddingfields, they provided notice of a claim to Mullins when the incident occurred.

The Beddingfields also indicated that, upon being served with initial service of process in the Linam litigation, they immediately notified "[their] insurance company" and Mullins.